2013 UT App 289

STATE of Utah, Plaintiff and Appellee,

v.

Donald MITCHELL, Defendant and Appellant.

No. 20110723–CA.

Court of Appeals of Utah.

Dec. 12, 2013.

Grant W.P. Morrison, Salt Lake City, Court J. Klekas II, and Laura J. Fuller, for Appellant.

Brian L. Tarbet and Marian Decker, Salt Lake City, for Appellee.

Judge J. FREDERIC VOROS JR. authored this Opinion, in which Judges GREGORY K. ORME and MICHELE M. CHRISTIANSEN concurred.

Opinion

VOROS, Judge:

¶ 1 Donald Mitchell appeals from his conviction of ten counts of sexual exploitation of a minor, a second degree felony. We affirm.

## BACKGROUND

¶ 2 "When reviewing a jury verdict, we examine the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict, and we recite the facts accordingly." *State v. Kruger,* 2000 UT 60, ¶ 2, 6 P.3d 1116. Similarly, "[i]n reviewing a trial court's ruling on a suppression motion, we consider the facts in a light most favorable to the trial court's findings," *State v. Patefield,* 927 P.2d 655, 656 (Utah Ct.App. 1996) (citation and internal quotation marks omitted), and recite them accordingly, *State v. Blevins,* 968 P.2d 402, 402 (Utah Ct.App. 1998).

¶ 3 On September 20, 2006, Agent David White, assigned to the Utah Attorney General's Internet Crimes Against Children taskforce, used a computer program to access a peer-to-peer file-sharing network. He observed that a particular IP address was sharing files known to contain child pornography. Agent White then requested a search warrant; however, his affidavit in support of a search warrant contained an apparent inconsistency. He stated that he had observed this activity on September 26, 2006, but also stated that he had requested that the internet service provider identify the subscriber to whom that IP address was assigned as of September 20, 2006. Agent White explained the discrepancy at trial. Based on his contemporaneous notes, he testified that "the actual date that I made the direct connection with the suspect IP address was actually on

September 20th and was not on September 26th. I must have taken the time 12:26 and somehow got it in there. It was a typo."

¶ 4 The internet service provider informed Agent White that the IP address was assigned to Mitchell as of September 20, 2006. While the internet service provider listed Mitchell's address as 50 North 100 East, other databases listed Mitchell's address as 70 North 100 East. Based on information from the local sheriff, Agent White concluded that both addresses were "associated with the same house." Agent White's affidavit in support of a search warrant stated that as a result of his investigation he had "probable cause to believe that evidence [is] located on the premises at 70 North 100 East." The magistrate agreed and issued a search warrant for that address.

¶ 5 On November 14, 2006, Agent White and other officers approached Mitchell at the golf course where he worked, told him that they had a search warrant for his house, and told him that he would need to accompany them back to his house. The officers informed Mitchell of his *Miranda* rights, which he waived. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). For the safety of the officers, Mitchell was handcuffed during the drive to and search of his house. During the eight-mile drive, Mitchell gave the officers directions. When asked if he had downloaded child pornography, Mitchell responded that he had but stated that he had done so accidentally and that he had deleted the files. Upon arriving, Mitchell accompanied the officers into his house. After a search lasting nearly two hours, the officers confiscated two computers for later analysis and uncuffed Mitchell.[1]

¶ 6 The officers then obtained a second warrant, which authorized forensic analysis of the seized computers. This analysis revealed five child pornography videos on one of the computers. Because the videos depict-

ed ten different minors, Mitchell was charged with ten counts of sexual exploitation of a minor.

¶ 7 Before trial, Mitchell moved to suppress the statements he made to the officers, arguing that he was unlawfully arrested at the time of the conversation in the car. Mitchell also sought suppression of the videos on the ground that the second search warrant had been issued based on the illegally obtained statements. After a hearing, the trial court denied Mitchell's motion in a written order.

¶ 8 On the first day of trial, Mitchell filed a second motion to suppress on the ground that the IP address was not assigned to him as of September 26, 2006, the date listed in the affidavit. Mitchell also gave notice that he intended to call alibi witnesses and have his expert witness testify about evidence that Mitchell had received just days before trial. The trial court ruled that, while Mitchell could testify about his alibi, he could not call his intended alibi witnesses due to failure to timely file notice. The trial court further ruled that Mitchell's expert's testimony would be limited in scope because of his failure to file a proper report.

¶ 9 At trial, the agent who conducted the forensic analysis testified that he had identified a total of "ten picture files and ten video files" as "possible images of child pornography." This number of files exceeded the five files Mitchell was ultimately charged with possessing. Mitchell objected to the testimony on relevance grounds, but the trial court allowed it to rebut Mitchell's claim that "there were only [the] five files," which constituted "really a small minority of files."[2]

## ANALYSIS

### I. Validity of the Search Warrant

¶ 10 Mitchell first contends that the search warrant authorizing the search of his home

---

1. Before the officers left the house, Mitchell requested a ride back to his workplace so he could get his car. When the officers refused, Mitchell called a friend for a ride. On the way back to his workplace, Mitchell and his friend were struck head-on by a drunk driver and Mitchell was seriously injured.

2. On recross-examination, the agent acknowledged that, of the 500,000 files he examined, he was not aware of suspected child pornography in "any more than those 20 files."

computers was invalid under article I, section 14 of the Utah Constitution and under the Fourth Amendment to the United States Constitution. Mitchell argues that the trial court therefore should have granted his second motion to suppress. The trial court denied that motion to suppress as untimely. Mitchell has not challenged this basis for the trial court's ruling. "Because [Mitchell] fails to address the basis of the district court's ruling, we reject this challenge." *Golden Meadows Props., LC v. Strand*, 2010 UT App 257, ¶ 17, 241 P.3d 375.[3]

¶ 11 Mitchell also argues that he received ineffective assistance of counsel when his trial counsel failed to file a timely motion to suppress. *See* Utah R.Crim. P. 12(c)(1) (requiring motions to suppress to be raised at least five days prior to trial). To succeed on a claim of ineffective assistance of counsel, a defendant must show both "that counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

▮ ¶ 12 Mitchell has not demonstrated that he was prejudiced by his counsel's failure to file a timely motion to suppress, because he has not demonstrated a reasonable probability that the motion to suppress would have been granted had it been timely filed. Mitchell asserts that the affidavit supporting the warrant to search his house did not establish probable cause on its face. Probable cause exists when "there is a 'fair probability'

that evidence of the crime will be found in the place or places named in the warrant." *State v. Thurman*, 846 P.2d 1256, 1260 (Utah 1993) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

¶ 13 The search warrant affidavit contained an inaccurate date. Agent White's affidavit in support of the search warrant stated that on "September 26, 2006, at approximately 12:26 HRS MST," he observed child pornography being offered from a specific IP address on a peer-to-peer file-sharing network. Agent White further stated that he later sent an administrative subpoena to the internet service provider holding that IP address, requesting identification of the subscriber using that specific IP address "on September 20th, 2006, at 12:26 hours MST." The internet service provider responded that the IP address was assigned to Mitchell for a nine-day period including September 20.

¶ 14 Mitchell, assuming that the September 26 date was accurate, argues that the affidavit does not establish probable cause, because IP addresses frequently change. Therefore, Mitchell argues, no information was provided to show that he was the subscriber of the IP address on September 26, when the child pornography was being shared. The State responds that the September 26 date was a typographical error that did not undermine the probable cause determination.

¶ 15 Errors in an affidavit do not require suppression when the magistrate has a substantial basis to determine that the erroneous facts are merely typographical errors and the facts otherwise support a determination of probable cause. *See, e.g., State v. Valle–Flores*, 2005 UT App 290, ¶¶ 2–5, 117 P.3d 1069 (holding that a warrant to search 626 Pueblo Street was supported by probable cause despite the supporting affidavit's reference to both 624 Pueblo Street and 626 Pueblo Street); *State v. Wallace*, 2002 UT App

---

**3.** We reject Mitchell's state constitutional challenge for a second reason. Mitchell cites *State v. Worwood*, 2007 UT 47, 164 P.3d 397, for the proposition that "article I, section 14 of the Utah Constitution often provides greater protections to Utah citizens than the Fourth Amendment, despite nearly identical language." *Id.* ¶ 16. However, like Worwood's state constitutional analysis

in that case, Mitchell's "state constitutional analysis is limited to the truism that article I, section 14 may provide greater protections to Utah citizens than the Fourth Amendment. But [Mitchell] failed to advance a unique state constitutional analysis." *Id.* ¶ 19. So like our supreme court in *Worwood*, "we decline to reach it." *Id.*

243

295, ¶¶ 24–26, 55 P.3d 1147 (holding that a warrant to obtain a blood sample was valid despite a reference to a urine sample in the addendum to the affidavit because the "minor inconsistency" did "not seriously undermine the information underlying the probable cause determination"); *United States v. Snyder*, 471 Fed.Appx. 884, 885 (11th Cir.2012) (per curiam) (holding that an affidavit that gave directions to 1924 Queen City Avenue and included a description of the numberplate and building at that location provided sufficient probable cause to validate a search warrant despite also containing a single reference to 1942 Queen City Avenue); *United States v. Maxwell*, 45 M.J. 406, 420 (C.A.A.F. 1996) (declining to invalidate a warrant based on an affidavit in which a scrivener's error changed a username from "Reddel" (ending with a numeral) to "REDDEL" because the Federal Bureau of Investigation was otherwise "clear that they were searching" for the former); *see also State v. Rosario*, 238 Conn. 380, 680 A.2d 237, 240–41 (1996) (concluding that an affidavit's misstatement of the year did not undermine probable cause where other information in the affidavit indicated the correct year); *State v. White*, 368 So.2d 1000, 1002 (La.1979) (same); *State v. Marquardt*, 43 Or.App. 515, 603 P.2d 1198, 1199 (1979) (same); 2 Wayne R. LaFave, *Search and Seizure* § 3.7(b), at 496 (5th ed. 2012) ("[R]eference to a year other than the current year will not invalidate the warrant if the circumstances fairly indicate that the intended reference was to the current year."). *But see Stroud v. Commonwealth*, 295 Ky. 694, 175 S.W.2d 368, 369 (1943) (holding that an affidavit did not provide probable cause sufficient to validate a warrant where the affidavit stated an incorrect date uncontradicted by any other specific fact in the affidavit); *Greenstreet v. State*, 392 Md. 652, 898 A.2d 961, 973–74 (2006) (same).

¶ 16 We conclude that the affidavit here contained a substantial basis for the trial court to determine that the reference to September 26 was a typographical error and that the affidavit, read as a whole, presented a fair probability that evidence of child pornog-

raphy would be found by searching Mitchell's computer. In the affidavit, Agent White initially states that he observed the child pornography being shared from the IP address on September 26, 2006, at 12:26 MST. He then states that he requested the identity of the IP address user for September 20, 2006, at 12:26 MST. He concludes as follows: "Based on the foregoing, I respectfully submit that there is probable cause to believe that an individual known as Don Mitchell[,] accessing the Internet ... on September 20th, 2006, has committed violations of Section 76–5a–3 of the Utah Code...."

■ ¶ 17 In light of this evidence, Mitchell has not demonstrated a reasonable probability that a timely motion would have resulted in suppression of the evidence obtained from the search warrant. "The Sixth Amendment does not require counsel to make futile objections." *State v. Ricks*, 2013 UT App 238, ¶ 22 (citing *State v. Whittle*, 1999 UT 96, ¶ 34, 989 P.2d 52). Accordingly, Mitchell has not shown that he was prejudiced by his counsel's failure to make the motion. Therefore, counsel's failure to timely file a motion to suppress based on the validity of the warrant did not amount to constitutionally ineffective assistance of counsel.

## II. Motion to Suppress Due to Allegedly Illegal Arrest

■ ¶ 18 Mitchell next challenges the trial court's denial of an earlier, timely motion to suppress. As explained above, en route from his workplace to his house, Mitchell told police that he had downloaded child pornography by accident but that he had deleted it. At the house, the officers continued to detain Mitchell for nearly two hours while they searched Mitchell's house and computers. Mitchell moved to suppress, as fruit of an illegal arrest, the statements he made and the evidence of child pornography ultimately found on one of his computers. The trial court denied the motion.[4] It ruled that the statements were admissible because they were made voluntarily. And it ruled that the

4. On appeal, Mitchell argues that "[a]ll of the evidence seized should have been suppressed." However, aside from a single general remark

about confessions, Mitchell does not appear to challenge the trial court's ruling regarding the admission of the statements.

evidence from the computers was admissible because Mitchell's detention was not a formal arrest but was justified under *Michigan v. Summers,* which recognizes limited authority to detain occupants of premises incident to the execution of a search warrant. *See* 452 U.S. 692, 705, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). *But see Bailey v. United States,* ——— U.S. ———, 133 S.Ct. 1031, 185 L.Ed.2d 19 (2013) (limiting *Summers* ). The trial court ruled in the alternative that the evidence found on the computer was admissible under the inevitable discovery doctrine. It reasoned that the evidence would have been discovered through the search warrant "regardless of [Mitchell's] presence, his cooperation, or his statements."

¶ 19 On appeal, Mitchell challenges the trial court's ruling admitting evidence gathered from one of his computers. "We review a trial court's factual findings underlying a decision to grant or deny a motion to suppress evidence for clear error. However, we review the trial court's conclusions of law based on such facts under a correctness standard, according no deference to the trial court's legal conclusions." *State v. Garcia,* 2007 UT App 228, ¶ 7, 164 P.3d 1264 (citations and internal quotation marks omitted).

▓ ¶ 20 Assuming without deciding that Mitchell's detention was illegal, we conclude that the trial court properly admitted the evidence under the inevitable discovery doctrine. Generally, "[w]hen evidence is the product of illegal governmental activity, a court must suppress the evidence to deter the illegality." *State v. Tripp,* 2010 UT 9, ¶ 56, 227 P.3d 1251 (citing *Nix v. Williams,* 467 U.S. 431, 442–43, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). One exception to this rule is the inevitable discovery doctrine. *Nix,* 467 U.S. at 443–44, 104 S.Ct. 2501; *State v. Topanotes,* 2003 UT 30, ¶¶ 13–14, 76 P.3d 1159; *State v. Strieff,* 2012 UT App 245, ¶ 8, 286 P.3d 317, *cert. granted,* 298 P.3d 69 (Utah 2013). "The inevitable discovery doctrine admits unlawfully obtained evidence if the police would have, in spite of the illegality, discovered the evidence by some other legal means." *Tripp,* 2010 UT 9, ¶ 56, 227 P.3d 1251; *see also Topanotes,* 2003 UT 30,

¶ 14, 76 P.3d 1159; *Strieff,* 2012 UT App 245, ¶¶ 8–10, 286 P.3d 317.

▓ ¶ 21 "A crucial element of inevitable discovery is independence; there must be some independent basis for discovery, and the investigation that inevitably would have led to the evidence [must] be independent of the constitutional violation." *Topanotes,* 2003 UT 30, ¶ 16, 76 P.3d 1159 (alteration in original) (citations and internal quotation marks omitted). "Thus, the fact or likelihood that makes the discovery inevitable [must] arise from circumstances other than those disclosed by the illegal search itself." *Id.* (alteration in original) (citation and internal quotation marks omitted). Although the inevitable discovery doctrine deals in hypothetical scenarios, the prosecution must prove by a preponderance of the evidence not merely that "the situation *could* have developed in the manner hypothesized by the State," but that the independent source "*would* have led to legal discovery of the evidence in question." *Id.* ¶ 21. "If the evidence would not *necessarily* have been discovered, then it must be excluded to effect the primary purpose of the exclusionary rule: to deter unconstitutional police conduct." *Strieff,* 2012 UT App 245, ¶ 10, 286 P.3d 317.

¶ 22 Mitchell argues that the State would not have discovered the evidence on his computers without detaining him, because the officers could not have found his house without his assistance. This is so, Mitchell contends, because "the address listed on the search warrant was 70 North 100 East," which was his father's address; Mitchell's own address was 50 North 100 East.

¶ 23 The record supports the trial court's determination. The search warrant affidavit contained Mitchell's address as well as his father's. It identified 70 North 100 East as the "situs address" and 50 North 100 East as the "physical address." The affidavit further stated that the internet service provider had identified Mitchell's address (correctly) as 50 North 100 East. Furthermore, after listing Mitchell's father's address, the warrant contained a detailed physical description of Mitchell's house. At the suppression hearing, Agent White testified that in light of the existence of two addresses, he had the local

police photograph Mitchell's house and write a physical description of it. Agent White testified that on the day of the search Mitchell directed the officers to his house, but that Agent White also recognized the house by the photographs and written physical description.

¶ 24 The trial court concluded that although Mitchell directed the officers to his house, "[u]pon arriving at the house, Agent White determined the residence to be searched based on the description of the home in the affidavit and warrant. [Mitchell] confirmed it was his house." Mitchell has not challenged this finding as clearly erroneous. Accordingly, we have no factual basis to set aside the trial court's conclusion that the valid search warrant was an "independent basis for discovery" that would have inevitably led to the computer evidence "independent of the constitutional violation." *See Topanotes*, 2003 UT 30, ¶ 16, 76 P.3d 1159 (citations and internal quotation marks omitted).

### III. Sufficiency of the Evidence

¶ 25 Mitchell next contends that the evidence presented at trial was insufficient to support the jury's conclusion that he knowingly possessed child pornography. *See* Utah Code Ann. § 76–5b–201 (LexisNexis 2012). The State responds that Mitchell "argues his sufficiency challenge as if it were preserved" without demonstrating that it was.

¶ 26 "[A]s a general rule, a defendant must raise the sufficiency of the evidence by proper motion or objection to preserve the issue for appeal." *State v. Holgate*, 2000 UT 74, ¶ 16, 10 P.3d 346. Rule 24 of the Utah Rules of Appellate Procedure requires an appellant's opening brief to include, for each issue presented for review, "citation to the record showing that the issue was preserved in the trial court." Utah R.App. P. 24(a)(5)(A). A reply brief is "limited to answering any new matter set forth in the opposing brief." *Id.* R. 24(c); *see also Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903 ("It is well settled that issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and

will not be considered by the appellate court." (citations and internal quotation marks omitted)).

¶ 27 Mitchell's opening brief does not state where in the record this issue was preserved and does not assert any exception to the preservation requirement. *See Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (identifying plain error and exceptional circumstances as two exceptions to the preservation requirement). Instead, it cites generally to the entirety of the three-day jury trial transcript—nearly 700 pages. Only in his reply brief does Mitchell touch upon exceptions to the preservation requirement in relation to his sufficiency challenge. But he does not explain how any of the exceptions apply to that challenge.

¶ 28 After reviewing the record, we agree with the State that Mitchell did not preserve this claim. *See* Utah R.App. P. 24(a)(9). And merely mentioning in a reply brief that exceptions to the preservation requirement exist does not serve to invoke them. *See id.* R. 24(c); *Allen*, 2008 UT 56, ¶ 8, 194 P.3d 903. Thus, on procedural grounds alone, his sufficiency challenge fails.

¶ 29 But even if that were not the case, Mitchell has not demonstrated plain error. A trial court plainly errs "if it submits the case to the jury and thus fails to discharge a defendant when the insufficiency of the evidence is apparent to the court." *Holgate*, 2000 UT 74, ¶ 17, 10 P.3d 346 (citing Utah Code Ann. § 77–17–13 (1999)). "While it is difficult for the court on appeal to dictate when an evidentiary defect was apparent to the trial court, there is a certain point at which an evidentiary insufficiency is so obvious and fundamental that it would be plain error for the trial court not to discharge the defendant." *Id.* Here, Mitchell challenges the evidence that his possession of the child pornography was knowing. "Proof of a culpable mental state comes by way of circumstantial evidence, and proof of intent or knowledge is an inference that may be drawn by the factfinder both from direct and from circumstantial evidence." *State v. O'Bannon*, 2012 UT App 71, ¶ 43, 274 P.3d 992

(citing *State v. James,* 819 P.2d 781, 789–90 (Utah 1991)).

¶30 An appellant challenging a factual finding must "marshal all record evidence that supports the challenged finding." Utah R.App. P. 24(a)(9). Marshaling entails presenting "a precisely focused summary of all the evidence supporting" the challenged finding. *Chen v. Stewart,* 2004 UT 82, ¶77, 100 P.3d 1177. Having done so, the appellant must then "ferret out a fatal flaw in the evidence." *West Valley City v. Majestic Inv. Co.,* 818 P.2d 1311, 1315 (Utah Ct.App.1991).

 ¶31 More than a mere briefing requirement, the marshaling rule is prudent tactical advice. An appellant cannot demonstrate that the evidence supporting a factual finding falls short without giving a candid account of that evidence. "Formal briefing requirements aside, an argument that does not fully acknowledge the evidence supporting a finding of fact has little chance, as a matter of logic, of demonstrating that the finding lacked adequate factual support." *Bailey v. Retirement Bd.,* 2012 UT App 365, ¶8, 294 P.3d 577.

¶32 Mitchell's summary of the evidence supporting the jury's verdict omits evidence that would support a finding that he knowingly possessed child pornography. For example, evidence was presented at trial that Mitchell used known child pornography search terms on a peer-to-peer file-sharing network, had pending download requests for files containing those terms, changed the default folder to which downloads were automatically sent, and had manually moved some of the downloaded files from that folder to a second folder. Additionally, one of the three file-sharing programs on his computer was set to automatically delete his search history when closed. Having failed to marshal this apparently incriminating evidence, Mitchell does not explain why it, in combination with evidence Mitchell does marshal, is insufficient to support a finding of knowledge. Accordingly, his argument falls short

of demonstrating that the jury's verdict was not supported by sufficient evidence.

¶33 In sum, even if we were to overlook Mitchell's failure to preserve this claim and to brief plain error on appeal, we nevertheless would not agree that he has ferreted out a fatal flaw in the evidence "so obvious and fundamental" that the trial court committed plain error by not sua sponte discharging him at trial. *State v. Holgate,* 2000 UT 74, ¶17, 10 P.3d 346.

 ¶34 Next, Mitchell argues that the State violated its duty to disclose exculpatory evidence as required by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady,* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." *Id.* at 87. However, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). The Utah Supreme Court has held that "a *Brady* violation occurs only where the state suppresses information that (1) remains unknown to the defense both before and throughout trial and (2) is material and exculpatory, meaning its disclosure would have created a reasonable probability that the result of the proceeding would have been different." *State v. Pinder,* 2005 UT 15, ¶24, 114 P.3d 551 (citation and internal quotation marks omitted).[5]

¶35 Less than two weeks before trial, Mitchell sent a supplemental discovery request asking for the specific file names and file paths for the files on which the State based its charges of sexual exploitation of a minor. The State provided the information a few days before trial. Mitchell argues that this information led to evidence which "would

5. We are aware that some federal circuits do not read *Brady* in this way. *See, e.g., United States v. Burke,* 571 F.3d 1048, 1054 (10th Cir.2009) (collecting cases and stating that "[i]t would eviscerate the purpose of the *Brady* rule and encourage gamesmanship were we to allow the government to postpone disclosures until the last minute, during trial"). However, *Pinder* controls our decision here and we do not look beyond it.

have directly exonerated [him] by showing that some of the files downloaded were downloaded while the computer was in the custody of the investigators." Mitchell also asserts that he was not present when several of the files were accessed.

¶ 36 Mitchell sought to admit this evidence through the testimony of his expert and through alibi witnesses. However, the trial court ruled that the additional expert testimony could not come in because the notice of expert did not comply with the rules. The trial court also ruled that due to the late notice, any alibi evidence would be limited to Mitchell's own testimony, should he take the stand. *See* Utah Code Ann. § 77–14–2 (LexisNexis 2012) (requiring notice of alibi to be given at least ten days before trial).

¶ 37 Mitchell has not carried his burden of demonstrating a *Brady* violation. First, Mitchell does not contend that the evidence in question was "unknown to the defense both before and throughout trial." *See Pinder*, 2005 UT 15, ¶ 24, 114 P.3d 551. Indeed, he acknowledges that it was provided to him before trial.

¶ 38 Second, although Mitchell claims that the evidence "would have created a reasonable probability that the result of the proceeding would have been different," *see id.*, he does not explain how. The gist of Mitchell's claim, as we understand it, is stated in this passage from his opening brief: "The State's expert testified that all these files had been viewed more than once as [they] were in the recent document folders for November 14, 2006 and November 15, 2006." He continues, "However, the police officer[s] picked up Donald [Mitchell] from the [golf course] on November 14, 2006 at 4:40 p.m. and confiscated his computer that night. Shortly [afterwards,] he was in an accident."[6] Thus,

he concludes, he could not have accessed the files on November 14 or November 15.

¶ 39 However, the State's expert did not testify that the files were accessed on November 15, 2006. He testified that he had determined that one of the files had been opened "a minimum of two times" based on registry information showing that "prior to August 8th the file was opened, and then back in November, *prior to November 15th*, it was opened again." (Emphasis added.)[7] In any event, the fact that Mitchell was not present when some files were downloaded does not prove that he had not earlier requested the downloads. As the testimony at trial demonstrated, Mitchell need not have been present when previously-requested downloads took place. And the State's expert also testified that the files' access dates could refer to any number of actions besides opening a file, such as running a virus scan. Such actions would not necessarily need a user present. Mitchell has thus failed to demonstrate that the supposedly exculpatory evidence would have created a reasonable probability that the result of the proceeding would have been different, especially in light of the evidence recounted above. *See supra* ¶ 32.

## V. Expert Testimony and Alibi Defense Limitations

¶ 40 Mitchell also challenges the trial court's rulings limiting his expert's testimony and excluding alibi witnesses. He argues that the trial court's rulings constituted plain error and that the rulings resulted from ineffective assistance of counsel. Plain error and ineffective assistance of counsel "share a 'common standard' of prejudice." *State v. McNeil*, 2013 UT App 134, ¶ 42, 302 P.3d 844 (quoting *State v. Litherland*, 2000 UT 76,

---

6. We presume our insertions capture the intended meaning of these sentences in Mitchell's brief, which read as follows: "The State's expert testified that all these files had been viewed more than once as there were in the recent document folders for November 14, 2006 and November 15, 2006. However, the police officer picked up Donald White from the Gold Course on November 14, 2006 at 4:40 p.m. and confiscated his computer that night. Shortly after he was in an accident." No one named Donald White is mentioned in the record.

7. The State's expert also noted that the system registry recorded that the last time someone had logged on to the computer was November 15, 2006. He then explained that, because the registry used a "Universal Time Code" offset from Mountain Daylight Time by seven hours, the last login had actually occurred at 5:37 p.m. MDT on November 14, 2006.

¶ 31 n. 14, 12 P.3d 92). "Under either theory, a defendant must demonstrate that, absent the error or deficient performance, there is a reasonable probability of a more favorable result." *Id.* (citation and internal quotation marks omitted).[8]

¶ 41 As discussed above, Mitchell has not demonstrated that he was prejudiced by the exclusion of evidence that the files were downloaded when he was not present. Accordingly, his claims of plain error and ineffective assistance of counsel cannot succeed.

¶ 42 Mitchell also asserts in his opening brief that "[t]here are documents generated by the expert, not in the record, that if admitted would tend to exonerate [him]." Yet Mitchell never moved for a rule 23B remand to establish a record to demonstrate prejudice. *See* Utah R.App. P. 23B. "If a defendant is aware of any 'nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective,' defendant bears the primary obligation and burden of moving for a temporary remand." *State v. Litherland,* 2000 UT 76, ¶ 16, 12 P.3d 92 (quoting Utah R.App. P. 23B). "Where the record appears inadequate in any fashion, ambiguities or deficiencies resulting therefrom simply will be construed in favor of a finding that counsel performed effectively." *Id.* ¶ 17. Mitchell has not attempted to supplement the record with evidence tending to show that he was prejudiced. Absent a showing of prejudice, he is not entitled to relief.

### VI. Continuance of Trial

¶ 43 Mitchell next contends that the trial court plainly erred by failing to continue trial when, on the first day of trial, Mitchell made his untimely second motion to suppress and his untimely notice of alibi. To obtain relief under the doctrine of plain error, an appellant must show that: "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likeli-

hood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Dunn,* 850 P.2d 1201, 1208–09 (Utah 1993).

¶ 44 Mitchell does not claim that the trial court's rulings violated any rule of law. Rather, he claims that the obvious error that the trial court should have noticed and corrected was his trial counsel's deficient performance. Mitchell cites no authority for the proposition that ineffective assistance of counsel can constitute an obvious trial error warranting reversal under the plain error doctrine; the only case he refers to discusses generally a defendant's right to effective assistance of counsel. *See* Utah R.App. P. 24(a)(9) (requiring briefs to contain citation to and analysis of authority). Furthermore, as explained above, Mitchell has not demonstrated that he was harmed by the denial of the motion to suppress or by the exclusion of alibi witness testimony. Therefore, Mitchell has not demonstrated that the trial court plainly erred.

### VII. Uncharged Offenses

¶ 45 Finally, Mitchell contends that, under rules 403 and 404(b) of the Utah Rules of Evidence, the trial court erred by admitting testimony that his computer contained uncharged images of child pornography. Mitchell did not adequately preserve this issue for appeal. To preserve an issue for appeal, "[t]rial counsel must state clearly and specifically all grounds for objection." *State v. Larsen,* 865 P.2d 1355, 1363 n. 12 (Utah 1993); *see also* Utah R. Evid. 103(a)(1)(B). "[T]he issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.,* 2004 UT 72, ¶ 51, 99 P.3d 801. "[W]e will not consider an issue brought for the first time on appeal unless the trial court committed plain error or exceptional circumstances exist." *State v. Pinder,* 2005 UT 15, ¶ 45, 114 P.3d 551 (citation and internal quotation marks omitted). "When a party seeks re-

---

8. Ordinary preserved error shares this same prejudice standard. *See State v. Knight,* 734 P.2d 913, 919 (Utah 1987) (explaining "that an error warrants reversal only if a review of the record persuades the court that without the error there was a reasonable likelihood of a more favorable result for the defendant" (citations and internal quotation marks omitted)).

view of an unpreserved objection, we require that the party articulate an appropriate justification for appellate review." *Id.* Thus, we do not address unpreserved issues not shown to be within an exception to the preservation rule.

¶ 46 On redirect, the prosecutor asked the State's expert about "ten picture files and ten video files" found on the computer that he had identified as possible child pornography. Mitchell's counsel interjected, "I'm going to object to the relevance of the extra images. We're having to defend on ten, and we're now talking about all sorts of images that he could have done this or that to. We don't have any way of preparing a defense on those additional [files]." The trial court asked the prosecutor, "Where are you going with that?" The prosecutor responded that, although the State had pursued charges relating to only five of the files, the challenged testimony was relevant to counter Mitchell's earlier suggestion that "there were only these five files" containing child pornography on his computer. The trial court overruled the objection, and the expert further testified that "there weren't any more than those 20 files" and that "it's questionable whether or not" the fifteen uncharged files actually depicted child pornography, because they were not introduced into evidence for the jury to consider.

¶ 47 Mitchell objected only on relevance grounds, signaling his view that the evidence lacked any probative value. *See* Utah R. Evid. 401, 402. And in the following discussion, Mitchell, the prosecutor, and the trial court all treated the objection as an objection on relevance grounds. But Mitchell does not argue relevance on appeal. Instead he argues that the trial court erred under rules 403 and 404(b) of the Utah Rules of Evidence. "[R]ule 403 expressly permits the trial court to exclude relevant evidence. Accordingly, a relevance objection does not preserve a claim [under rule 403] that the evidence, even if relevant, should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice." *State v. Davis,* 2013 UT App 228, ¶ 72, 311 P.3d 538 (citation omitted). Like-

wise, claims of improper use or lack of notice under rule 404(b) are not preserved by a relevance objection. Defense counsel used none of the words or phrases commonly associated with rules 403 and 404(b), such as "unfair prejudice," "prior bad acts," "propensity," or "improper purpose." Accordingly, Mitchell did not "state ... all grounds for objection," *Larsen,* 865 P.2d at 1363 n. 12, nor did he present the issue "to the trial court in such a way that the trial court ha[d] an opportunity to rule on that issue," *438 Main St.,* 2004 UT 72, ¶ 51, 99 P.3d 801. Because these claims of error are unpreserved and Mitchell claims no exception to the preservation requirement, we do not address them.

## CONCLUSION

¶ 48 Mitchell has neither challenged the basis of the trial court's ruling that his motion to suppress was untimely nor shown that his counsel was constitutionally ineffective for failing to timely file that motion. Furthermore, he has failed to demonstrate that the trial court erred in denying an earlier motion to suppress on the basis of the inevitable discovery doctrine. Mitchell did not preserve his insufficiency claim and does not invoke a recognized exception to the preservation requirement. He has not factually demonstrated a *Brady* violation nor has he explained how one could reasonably have led to a different result at trial. Mitchell has not shown prejudice resulting from the trial court's rulings limiting his expert and alibi witnesses' testimony. For this reason, Mitchell is not entitled to relief under the theory that the trial court plainly erred when it refused to continue the commencement of trial. Finally, Mitchell did not preserve a claim under rules 403 or 404(b) of the Utah Rules of Evidence relating to evidence of uncharged images of child pornography.[9]

¶ 49 Affirmed.

9. We have addressed in some detail Mitchell's principal contentions on appeal. He has cursori-

---

ly raised a few additional issues. Having considered them, we conclude they lack merit, and we decline to address them further. *See Carter v. State*, 2012 UT 69, ¶ 16 n. 7, 289 P.3d 542 ("[T]his [c]ourt need not analyze and address in writing each and every argument, issue, or claim raised. . . . Rather, it is a maxim of appellate review that the nature and extent of an opinion rendered by an appellate court is largely discretionary with that court." (ellipsis in original) (citation and internal quotation marks omitted)).