2020 UT App 75

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
SANTANA JAMES PERCIVAL,
Appellant.

Opinion
No. 20180377-CA
Filed May 7, 2020

Third District Court, Salt Lake Department
The Honorable Mark S. Kouris
No. 151903580

Herschel Bullen, Attorney for Appellant

Sean D. Reyes and Jonathan S. Bauer, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES GREGORY K. ORME and DIANA HAGEN concurred.

POHLMAN, Judge:

¶1 Santana James Percival was the only person seen with a knife during a brawl that broke out at a party attended by numerous gang members. In the melee, four people were stabbed, including one victim who suffered life-threatening stab wounds to his heart and lung. Percival appeals his convictions for aggravated assault resulting in serious bodily injury, a second-degree felony, and aggravated assault, a third-degree felony. He claims that his trial counsel was constitutionally ineffective in failing to request a special verdict form to ensure jury unanimity regarding the victim of the third-degree-felony aggravated assault. He also claims that the district court abused its discretion by admitting gang evidence. He has not shown prejudice on either claim and we therefore affirm.

## BACKGROUND[1]

¶2    On the night of March 13, 2015, twenty-three-year-old Percival hosted a party at the third-floor apartment he shared with his seventeen-year-old girlfriend, Danielle.[2] Marco and Nicholas attended the party, along with several teenagers, including Adriana, Sandra, and Carlos. There was "[a] lot of drinking" at the party.

¶3    Percival was the leader of a gang called the Sureños Villains, a subset of the Sureños gang. The party itself was "a Friday the 13th celebration party" because the number "13 is correlated with [the] Sureños." Partygoers wore "tan Dickies and white shirts," clothing associated with the gang.

¶4    Nicholas and Carlos were members of the Washington Boys gang. The Washington Boys are another subset of the Sureños gang. The Sureños Villains and the Washington Boys were friendly with each other, and both groups used blue as their gang color.

¶5    During the party, Percival and Nicholas started arguing near the bathroom. One witness thought that the argument was precipitated by Percival saying something about Nicholas's red hat, which was a color associated with a different gang, while another thought that Nicholas had criticized Percival's leadership of the Sureños Villains. In any event, Percival and Nicholas were in "each other's faces yelling back and forth."

---

1. "On appeal from a jury verdict, we view the evidence and all reasonable inferences in a light most favorable to that verdict and recite the facts accordingly." *State v. Pinder*, 2005 UT 15, ¶ 2, 114 P.3d 551 (cleaned up).

2. We use pseudonyms to protect the privacy of the victims and witnesses in this case.

¶6 When the argument got louder, at least two of the partygoers tried to intervene. But Percival "kept coming towards" Nicholas, trying to fight. Nicholas left the apartment and went downstairs to the ground level of the apartment building.

¶7 But the conflict did not end there. Percival ran down the stairwell and "tackled" Nicholas on the grass. They started punching each other. Carlos then saw Percival stab Nicholas with a knife he observed in Percival's hand. Nicholas fell to the ground, and Adriana and Sandra saw that he was bleeding from his chest.

¶8 Adriana tried to pick up Nicholas, turning her back to Percival. Adriana then felt Percival "hit [her] in the back" and felt a "numb feeling" in the side of her hip. Although she did not immediately realize that she had been stabbed, Adriana knew that Percival struck her. Sandra also saw Percival hit Adriana in the side and Sandra tried to stop Adriana's bleeding.

¶9 Also while Percival was hitting Nicholas, who was on the ground, Danielle approached Percival and put her hand on his back. She then felt "hits" to her face and stomach without seeing who hit her and she "blacked out." But Adriana and Sandra both saw Percival fall on top of Danielle.

¶10 Percival resumed hitting Nicholas, who was still on the ground and bleeding. Marco joined Percival, and the two "started kicking" and continued punching Nicholas.

¶11 Eventually, Adriana, Sandra, and Carlos helped get Nicholas into a car so that they could take him to the hospital. Nicholas's injuries required emergency lifesaving measures, including CPR and surgery. He had two penetrating wounds to his chest, which caused his lung to collapse and created a hole and bleeding in his heart. Although Nicholas survived his injuries, he suffered permanent cognitive impairment.

¶12 The police were contacted and they investigated at the hospital and at the apartment complex. They discovered that, in addition to Nicholas, three other individuals had stab wounds. Adriana was wounded in her left hip, Danielle had two stab wounds to her shoulder and back, and Marco had a small stab wound to his lower leg. They also observed that Percival had blood on his clothes and injuries on his right hand, including to the base of his thumb and to the "web" between his thumb and forefinger.

¶13 The partygoers, however, were less than forthcoming about the events of the evening. Expecting that the police would be called, Adriana, Sandra, and Carlos "all decided to lie" because, among other things, they thought they "were going to get locked up" because they had been drinking at a party while underage and "ended up fighting." In keeping with their plan, Adriana and Sandra later told police that "a black guy came towards" them near a high school and stabbed Nicholas. They both admitted at Percival's trial that this story was a lie.

¶14 The State charged Percival with one count of attempted murder or, alternatively, second-degree-felony aggravated assault resulting in serious bodily injury (Count One) for his acts against Nicholas. It also charged him with one count of aggravated assault as a third-degree felony (Count Two) for the other stabbings.

¶15 The case proceeded to a four-day jury trial. Adriana, Danielle, Sandra, and Carlos testified about the altercation. Although Sandra testified "there was something in [Percival's] hand" that she "assumed" was a knife because "it looked like a knife" and she saw bleeding, Carlos was the only witness who specifically testified that he saw the knife in Percival's hand. But Adriana, Sandra, and Danielle testified that they had seen Percival with a knife on other occasions. Adriana testified that shortly before the day of the party, Percival showed her his

yellow pocketknife, "flipping it open and stuff." Sandra had also witnessed Percival show off a switchblade pocketknife. And Danielle testified that Percival kept a knife in his right pocket.

¶16    Throughout trial, the defense repeatedly objected to the introduction of evidence of Percival's gang membership and activity and evidence of other aspects of gang activity. The defense argued that the gang evidence was, among other things, irrelevant and unfairly prejudicial. The district court overruled the objections but noted that it would "watch[] . . . closely . . . in terms of the need to get so deeply into this gang business." The court thus allowed Danielle, Sandra, and Carlos to provide evidence about the gangs. *Supra* ¶¶ 3–5. Additionally, over the defense's objection, the State presented expert testimony from a detective (Detective), who testified about the Sureños gang in Utah, its symbols, customs, and codes of conduct.

¶17    Relevant to this appeal, the district court instructed the jury, in Instruction 33, that to convict on aggravated assault as charged in Count Two, it had to find beyond a reasonable doubt each of the following elements:

> 1. That the defendant, Santana James Percival;
>
> 2. Intentionally, knowingly, or recklessly;
>
> 3. Committed an Assault;
>
> 4. That caused bodily injury to [Adriana] OR [Danielle] OR [Marco];
>
> 5. And used a dangerous weapon; AND
>
> 6. The defense of self-defense or defense of a third person does not apply.

No special verdict form was given to the jury, and Percival's trial counsel made no request for a special verdict form.

¶18   The jury returned a verdict finding Percival guilty of aggravated assault resulting in serious bodily injury on Count One and guilty of aggravated assault on Count Two. Percival appeals.

## ISSUES AND STANDARDS OF REVIEW

¶19   First, Percival contends that his trial counsel was constitutionally ineffective in failing to request a special verdict form on Count Two to ensure jury unanimity on the identity of the victim of that aggravated assault. To prevail on a claim of ineffective assistance of counsel, a defendant must establish both that his "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Ott*, 2010 UT 1, ¶ 16, 247 P.3d 344 (cleaned up).

¶20   Second, Percival contends that the district court erred by admitting, over his objection, evidence of gang affiliations and customs. "[W]e review a district court's ultimate decision to admit or exclude evidence for an abuse of discretion." *State v. Tulley*, 2018 UT 35, ¶ 26, 428 P.3d 1005. "A district court abuses its discretion only when its decision to admit or exclude evidence is beyond the limits of reasonability." *Id.* (cleaned up).

## ANALYSIS

¶21   Percival raises two issues for our consideration: one claim of ineffective assistance of counsel and one preserved claim of evidentiary error. To succeed, Percival must demonstrate that he was prejudiced either by his trial counsel's deficient performance or the district court's evidentiary error. *See* Utah R. Crim. P. 30(a) ("Any error, defect, irregularity or variance which

does not affect the substantial rights of a party shall be disregarded."); *State v. Garcia*, 2017 UT 53, ¶ 37, 424 P.3d 171 (explaining that under the test for an ineffective assistance claim, "it is the defendant's burden to show that he was prejudiced by his counsel's performance"); *State v. Reece*, 2015 UT 45, ¶ 33, 349 P.3d 712 ("[T]he defendant generally bears the burden to demonstrate that the error he complains of affected the outcome of his case.").

¶22 To establish prejudice for an ineffective assistance claim, the appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Likewise, establishing prejudice from a district court's alleged evidentiary error requires the same showing. *See State v. Mitchell*, 2013 UT App 289, ¶ 40 & n.8, 318 P.3d 238 ("Ordinary preserved error shares this same prejudice standard."); *see also State v. Landon*, 2014 UT App 91, ¶ 3, 326 P.3d 101 ("We will not overturn a jury verdict for the admission of improper evidence if the admission of the evidence did not reasonably affect the likelihood of a different verdict." (cleaned up)); *id.* ("'For an error to require reversal, the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict.'" (quoting *State v. Knight*, 734 P.2d 913, 920 (Utah 1987))).

¶23 For the reasons below, we conclude that Percival has not established prejudice with respect to either of his claims.

I. Ineffective Assistance Claim

¶24 Percival first contends that his trial counsel was ineffective in failing to request a special verdict form requiring the jury to identify a victim for the aggravated assault on Count Two. The consequence of trial counsel's failing, Percival asserts,

is that the jury may not have been unanimous on an element of the offense. Instruction 33 allowed the jury to convict Percival if the jury found all the elements beyond a reasonable doubt, including the element that Percival "caused bodily injury to [Adriana] OR [Danielle] OR [Marco]." Because of the phrasing on this element and the lack of a special verdict form, Percival asserts that "it is not possible to determine whether the jury was unanimous in its decision regarding any particular victim or combination of victims" on Count Two.

¶25    The State counters that "[t]here was no reasonable likelihood of a different verdict with a special verdict instruction, given the overwhelming evidence that only [Percival] stabbed people at the party." In other words, the State argues that it is not reasonably likely that the jury would have "failed to agree on a victim" had it been given a special verdict form for Count Two.

¶26    Article I, Section 10 of the Utah Constitution guarantees the right to a unanimous verdict in criminal cases. This provision "requires unanimity as to each count of *each distinct crime charged* by the prosecution and submitted to the jury for decision." *State v. Hummel*, 2017 UT 19, ¶ 26, 393 P.3d 314. And "a jury must be unanimous on all elements of a criminal charge for a conviction to stand." *Id.* ¶ 29 (cleaned up). A jury is not unanimous, however, if the jury instructions allow for conviction "with each juror deciding guilt on the basis of a different act by [the] defendant." *State v. Saunders*, 1999 UT 59, ¶ 62, 992 P.2d 951. For purposes of our analysis, we assume that Percival is correct that Instruction 33 in conjunction with the lack of a special verdict form violated his right to a unanimous verdict and that his trial counsel performed deficiently by not requesting a special verdict form.

¶27    But it is not enough to show deficient performance; Percival must also show prejudice. This means that he must show a reasonable likelihood that the use of a special verdict

form would have led to a more favorable result. Specifically, he must show that had the jury been given a special verdict form asking it to identify a specific victim, there is a reasonable likelihood that the jury would not have agreed on any one victim of the aggravated assault on Count Two. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).

¶28 Here, Percival's entire prejudice argument in his opening brief is confined to his statement that "prejudice is shown, i.e., there is a reasonable probability that but for . . . counsel's unprofessional errors, there is a reasonable likelihood of a more favorable outcome for [him]." (Cleaned up.) But "[m]erely repeating the legal prejudice standard is insufficient." *Archuleta v. Galetka*, 2011 UT 73, ¶ 52, 267 P.3d 232. Percival recites the prejudice standard without discussing the evidence and without articulating how the jury's verdict on Count Two is reasonably likely to have been different had a special verdict form been used. That does not satisfy the prejudice prong of the *Strickland* test for ineffective assistance of counsel. *See id.*; *see also State v. Murphy*, 2019 UT App 64, ¶ 42, 441 P.3d 787 (concluding that the appellant did not satisfy the prejudice prong of *Strickland* because he limited his prejudice argument "to the reiteration of the legal standard of the prejudice prong").

¶29 Further, based on our review of the evidentiary picture, we see no reasonable likelihood that the jury would not have agreed on any one victim on Count Two. We agree with the State that the evidence overwhelmingly established that Adriana, Danielle, and Marco were all stabbed during the fracas and that Percival was the sole person wielding a knife.[3]

_____

3. In fact, when discussing the wording of Instruction 33 at trial, the State suggested that because the evidence supported three aggravated assaults against these three victims, it could have charged Percival with two more counts of aggravated assault.

(continued…)

¶30     The police documented stab wounds to all three possible victims, and the testimony strongly showed that Percival inflicted those injuries during the fight. Adriana testified that when she tried helping Nicholas, she felt Percival stab her in the hip. Sandra also saw Percival hit Adriana and saw her bleeding afterward.

¶31     As for Danielle, both Adriana and Sandra saw Percival make contact with her when he fell on top of her. And Danielle herself testified that when she put her hand on Percival's back, she was hit and blacked out. She realized later that she had been stabbed in the shoulder and back. Though Danielle did not see who hit her, before she was hit, she saw in her proximity only Percival and Nicholas. And Nicholas was on the ground and, by all accounts, unarmed.

¶32     Finally, regarding Marco, Adriana and Sandra testified that Percival and Marco together kicked and punched Nicholas on the ground, and when police arrived on the scene, Marco had a small stab wound to his lower leg. This evidence is consistent with Percival recklessly stabbing Marco in the leg as the two men kicked and hit Nicholas. *See State v. Loeffel*, 2013 UT App 85, ¶¶ 7–10, 300 P.3d 336 (explaining that recklessness is sufficient to prove aggravated assault).

¶33     Significantly, Percival was the only person seen wielding a knife during the brawl. He also had injuries on his hand that could be consistent with using a knife to stab others. Because of the overwhelming evidence that Percival stabbed Adriana, Danielle, and Marco, it is unlikely that the jury would have

---

(…continued)

Percival benefited from the State's decision to charge only a single assault count when the evidence was likely more than sufficient to sustain convictions with respect to all three victims.

acquitted Percival on Count Two had it been asked to agree on a single victim.

¶34    In sum, Percival has not demonstrated that he was prejudiced by his counsel's failure to request a special verdict form to ensure jury unanimity on Count Two. His ineffective assistance claim therefore fails.[4]

## II. Claim of Evidentiary Error

¶35    Next, Percival claims that the district court abused its discretion by admitting "very substantial gratuitous and unnecessary references to [his] gang membership." Percival attacks the "sheer bulk" of the gang-related evidence, asserting that "[i]t was not necessary that the case be steeped in gang trivia, gang customs, gang signs and symbols, and all manner of gang matters, as it was." But in so arguing, he admits that, to a point, "[t]he gang angle had its place." Indeed, he agrees with the State that "the fight was apparently gang related, and therefore the fact that Percival and [Nicholas] got in to an argument related to gang issues was integral to the State's case." (Cleaned up.) Yet he claims "the overwhelming amount of gangland lore and collateral references . . . were so unnecessary" and were "of a nature to inherently generate a propensity for undue prejudice."

---

4. Percival alternatively claims that the district court plainly erred in failing to require a special verdict form as a necessary supplement to Instruction 33 to ensure jury unanimity regarding the victim of the aggravated assault. Under the rubric of plain error, an appellant must show the existence of an obvious and prejudicial error. *State v. Beverly*, 2018 UT 60, ¶ 37, 435 P.3d 160. Because "the prejudice test is the same whether under the claim of ineffective assistance or plain error," *id.* (cleaned up), Percival's plain-error argument likewise fails.

¶36    In response, the State emphasizes Percival's concession that "some gang evidence was proper." It then asserts that "[t]he admission of gang evidence beyond what [Percival] concedes was proper was 'unlikely to increase by any significant degree the negative impact of the properly admitted gang evidence.'" (Quoting *State v. High*, 2012 UT App 180, ¶ 52, 282 P.3d 1046.)

¶37    This court has acknowledged "there may be some unfair prejudice inherent in making the jury aware of gang affiliation in a criminal context." *State v. Garcia*, 2017 UT App 200, ¶ 33, 407 P.3d 1061 (cleaned up). Thus, "gang evidence should be viewed with caution due to the risk that it may carry some unfair prejudice, including potentially leading the jury to attach a propensity for committing crimes to defendants who are affiliated with gangs or allow its negative feelings towards gangs to influence its verdict." *Id.* (cleaned up). Yet "in the appropriate context, gang evidence has probative value warranting its admission even over claims of prejudice." *Id.* (cleaned up); *see also State v. Gonzalez*, 2015 UT 10, ¶¶ 37, 40, 345 P.3d 1168 (stating that "even where gang-related evidence is prejudicial, it is not necessarily *unfairly* prejudicial and therefore should be admitted where it has high probative value," and giving examples of properly admitted gang-related evidence, including evidence "explaining the circumstances surrounding a crime and the victim's and the defendant's intent"); *High*, 2012 UT App 180, ¶ 23 (collecting cases where gang-related evidence was properly admitted).

¶38    We agree with the State that Percival does not specify the point at which the gang evidence crossed the threshold from proper to improper. In other words, Percival has not identified specific error and what the district court should have done differently. And as a practical matter, without more assistance from Percival in this regard, we struggle to see error in the district court's admission of the gang evidence. *See State v. Graves*, 2019 UT App 72, ¶¶ 27–28, 442 P.3d 1228 (explaining that when the appellant conceded "that the trial court properly

allowed into evidence at least *some* references" to his heritage and the appellant did "not identify any specific juncture in the trial . . . at which he believe[d] the references crossed the line from individually permissible to cumulatively impermissible," it was not enough for the appellant to assert that "'at some point' . . . the repeated references . . . became error"); *see also State v. Ogden*, 2018 UT 8, ¶ 24 n.3, 416 P.3d 1132 ("An appellant that fails to devote adequate attention to an issue is almost certainly going to fail to meet its burden of persuasion." (cleaned up)); *Allen v. Friel*, 2008 UT 56, ¶ 7, 194 P.3d 903 (explaining that where an appellant does not "allege specific errors of the lower court, [this] court will not seek out errors in the lower court's decision").

¶39     In any event, although some of the gang evidence in this case was perhaps needlessly cumulative, we "will not overturn a jury verdict based on erroneous admission of evidence unless the defendant has been prejudiced as a result." *State v. Toki*, 2011 UT App 293, ¶¶ 44, 46, 263 P.3d 481. To establish prejudice, Percival must show that had the district court excluded gang evidence, there is a reasonable probability that he would not have been convicted on both counts. *See State v. Mitchell*, 2013 UT App 289, ¶ 40 & n.8, 318 P.3d 238.

¶40     "Bald assertions and platitudes are not enough to satisfy an appellant's burden to provide an adequate argument" on prejudice. *State v. Nelson*, 2015 UT 62, ¶ 40, 355 P.3d 1031. All Percival offers are bald assertions of prejudice. For example, he asserts that "[t]here was a strong likelihood" the gang evidence "affected the outcome of the trial to [his] detriment" and that "[b]ased upon the foregoing irrelevant and unnecessary gang references and the inflammatory effect upon the jury, it cannot be doubted that the jury was prejudiced." These bare assertions do not meet Percival's burden of persuasion.

¶41     Even setting aside the "gang angle," there was overwhelming evidence that during the altercation, Percival

inflicted life-threatening, permanent injuries to Nicholas and also stabbed Adriana, Danielle, and Marco. Given the strong evidence of Percival's guilt, we see no reasonable likelihood of a different verdict even had the district court excluded some of the gang evidence. *See State v. Landon*, 2014 UT App 91, ¶ 3, 326 P.3d 101 ("We will not overturn a jury verdict for the admission of improper evidence if the admission of the evidence did not reasonably affect the likelihood of a different verdict." (cleaned up)); *State v. Ferguson*, 2011 UT App 77, ¶¶ 19–20, 250 P.3d 89 (considering the strength of the other evidence of guilt to determine whether harm resulted from the improper admission of certain evidence).

¶42 The jury was also admonished that the gang evidence was "not admitted to prove a character trait of the defendant nor to show that the defendant acted in a manner consistent with such a trait." The court advised the jury that it could consider the gang "evidence, if at all, for the limited purpose of identifying the defendant and the defendant's intent or motive." When a jury is so instructed, we "assume that the jury acted in accordance with [the] instruction in rendering its verdict." *High*, 2012 UT App 180, ¶ 53.

¶43 Percival nevertheless suggests that the gang evidence "may very well have convinced the jury that [he] was simply a bad person." Any damage in this regard, however, was likely already done by the admission of the fact that Percival was a gang member, which he concedes was proper. Moreover, the verdict in this case suggests that the jury was not easily hoodwinked into convicting Percival on the ground that he was "simply a bad person." Rather, on Count One, the jury acquitted Percival of the most serious charge against him, attempted murder, and instead it convicted him on the lesser included offense of aggravated assault with serious bodily injury. We agree with the State that this result undermines Percival's supposition that the gang evidence unfairly prejudiced the defense. *See Toki*, 2011 UT App 293, ¶¶ 3, 47 (explaining that the

result in that case—an acquittal on an aggravated assault charge and conviction on weapons charges only—was unlikely if the gang evidence was "so prejudicial that it aroused the jury to hostility or otherwise improperly influenced the jurors").

¶44    In short, even had Percival established at what point the gang evidence became improper, he has not shown that he was prejudiced by any error in its admission. We therefore discern no reversible error in the district court's decision to admit the gang evidence.[5]

CONCLUSION

¶45    Percival has not shown prejudice resulting from his trial counsel's failure to request a special verdict form on the identity of the victim of the third-degree-felony aggravated assault. He also has not shown prejudice resulting from the district court's admission of gang evidence. Accordingly, we affirm.

———————

5. Percival also suggests that we reverse for a new trial due to the "cumulative effect" of the errors in this case. Under the cumulative error doctrine, we will reverse "only if the cumulative effect of the several errors undermines our confidence that a fair trial was had." *State v. Martinez-Castellanos*, 2018 UT 46, ¶ 39, 428 P.3d 1038 (cleaned up). In other words, reversal is appropriate under this doctrine only when "there is a reasonable probability that, but for the several errors, a different verdict or sentence would have resulted." *Id.* ¶ 39 n.27. We conclude that even viewing the assumed errors collectively, there is no reasonable probability that absent those errors a different verdict would have resulted. *See id.*