Electronically Filed
Intermediate Court of Appeals
CAAP-12-0001017
29-JAN-2016
10:30 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI, Plaintiff-Appellant,
v.
RICK TRINQUE, Defendant-Appellee
and
MILES MARTINEZ, Defendant

NOS. CAAP-12-0001017 and CAAP-12-0001018

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CR. NO. 12-1-0105)

JANUARY 29, 2016

NAKAMURA, C.J., AND FOLEY, J.,
WITH GINOZA, J., CONCURRING SEPARATELY

OPINION OF THE COURT BY NAKAMURA, C.J.

Defendant-Appellee Rick Trinque (Trinque) and co-
defendant Miles Martinez (Martinez) were each charged by
indictment with: (1) first-degree commercial promotion of
marijuana for possessing or cultivating one hundred or more
marijuana plants; and (2) unlawful use of drug paraphernalia for
using or possessing with intent to use drug paraphernalia.

Trinque and Martinez were arrested by the police at night in a pasture where a large number of marijuana plants were being grown. After his arrest, Trinque made three incriminating statements to the police: (1) while being escorted out of the pasture (Statement 1); (2) outside the pasture while waiting to be transported to the police station (Statement 2); and (3) at the police station (Statement 3). The Circuit Court of the Fifth Circuit (Circuit Court)[1] suppressed all three statements.

Plaintiff-Appellant State of Hawai'i (State) appeals from the Circuit Court's "Findings of Fact, Conclusions of Law and Order Granting [Trinque's] Motion to Suppress Statements" (Order Suppressing Statements) and the Circuit Court's "Order Denying [the State's] Motion to Determine Voluntariness of Statements" (Voluntariness Order). On appeal, the State argues that the Circuit Court erred in suppressing Statements 2 and 3. As explained below, we hold that the Circuit Court erred in suppressing Statements 2 and 3. We vacate the Circuit Court's Order Suppressing Statements and its Voluntariness Order with respect to Statements 2 and 3, and we remand the case for further proceedings consistent with this Opinion.

BACKGROUND

After receiving information that marijuana was growing in a pasture in the Kīlauea area of Kaua'i, the Vice Division of the Kaua'i Police Department initiated an investigation. Over a thousand marijuana plants were apparently being cultivated in the pasture. Officer Brian Silva (Officer Silva) was the officer in charge of the investigation, and his supervisor, Officer Richard Rosa (Officer Rosa), was also involved.

At night, while on surveillance in the pasture, Officer Silva and other officers encountered Trinque and Martinez, who were placed under arrest. Trinque was handcuffed. It was dark, there was sugarcane and "grass everywhere," and the officers were trying to figure out how to get out of the pasture. Officer

_____

[1] The Honorable Kathleen N.A. Watanabe presided.

2

Silva or another officer escorting Trinque out of the pasture asked Trinque how he had entered the field. Trinque responded that he came over the fence by the banana tree using a ladder that was still located by the fence and that he was caught red handed (Statement 1).

After Trinque was taken from the pasture, he was ordered to sit on a bench outside a residence. Officer Rosa was assigned to watch Trinque. Officer Rosa had never met Trinque before. However, Officer Rosa had previously worked on a case involving Trinque's daughter. Officer Rosa, who was wearing his badge, introduced himself to Trinque as a police officer. Officer Rosa informed Trinque that he was the officer who had worked on Trinque's daughter's case; that Trinque could talk to his daughter if he did not believe Officer Rosa; that Officer Rosa would not lie to Trinque, would not "jerk [Trinque's] chain," and would be completely honest with Trinque. Officer Rosa told Trinque not to make any statements until Trinque was advised of his constitutional rights.[2] In response, Trinque stated, "What for? You caught us red handed, there's nothing left to say, times are hard and we needed the money" (Statement 2). Officer Rosa then told Trinque "not to make anymore statements until we got to Lihue" (where the police station is located).

Officers Silva and Rosa transported Trinque to the Lihue police station. After he was booked, Trinque was taken to an interview room where Officers Silva and Rosa were present. Officer Silva advised Trinque of his constitutional rights, using an advice of rights form. After he was advised of his Miranda[3]

---

[2] Officer Rosa testified that because of the time and the conditions, he told Trinque "not to make any statements until we got back to the Lihue [police station] where we could advise him of his rights." When asked why the police could not have advised Trinque of his rights at the scene, Officer Rosa explained that "at that time we were too busy. It was dark. I just wanted to get him to Lihue and let him sit down and read him his rights using the forms."

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

rights, Trinque was asked whether he wanted to make a statement. In response, Trinque stated that he did not want to make a statement since he got caught red-handed and was going to jail anyway (Statement 3).

Trinque filed a motion to suppress all three statements. The State opposed Trinque's suppression motion and also filed a motion to determine the voluntariness of Trinque's statements. The Circuit Court held an evidentiary hearing on both motions. The Circuit Court granted Trinque's motion to suppress and denied the State's motion to determine voluntariness. The Circuit Court entered its Order Suppressing Statements and its Voluntariness Order on October 30, 2012, and this appeal followed.[4/]

DISCUSSION

On appeal, the State challenges the Circuit Court's suppression of Statements 2 and 3. The State does not appeal the Circuit Court's decision to suppress Statement 1. Therefore, for purposes of this appeal, we assume, as found by the Circuit Court, that Statement 1 was a statement made in response to custodial interrogation by the police that was obtained in violation of Trinque's Miranda rights.

The State argues that the Circuit Court erred in concluding that Statement 2 was the product of a custodial interrogation and in suppressing Statement 2 on that basis. It

---

[4/] In its Order Suppressing Statements, the Circuit Court made findings of fact and conclusions of law in support of its decision to grant Trinque's suppression motion and to suppress Statements 1, 2, and 3. The Circuit Court did not provide any different or independent reasons for denying the State's motion to determine the voluntariness of Trinque's statements. The Circuit Court's Voluntariness Order simply states: "The Court having taken judicial notice of the files and records herein and having heard evidence and argument in the matter, and having GRANTED [Trinque's] Motion to Suppress Statements hereby ORDERS that the State's Motion to Determine Voluntariness of Statements is hereby DENIED." (Emphasis added.) Accordingly, it appears that the Circuit Court relied on the same grounds to grant Trinque's suppression motion and to deny the State's voluntariness motion. In deciding this appeal, we will treat the Circuit Court's grounds for granting Trinque's suppression motion as its basis for denying the State's motion to determine the voluntariness of Trinque's statements.

4

also argues that the Circuit Court erred in suppressing Statement 3 as the unlawful fruit of Statements 1 and 2.

We conclude that Statement 2, which was made in response to Officer Rosa's telling Trinque *not to make any statements* until Trinque was advised of his constitutional rights, was not the product of interrogation. Therefore, the State did not violate Trinque's Miranda rights in obtaining Statement 2 and the Circuit Court erred in suppressing Statement 2 on Miranda grounds. We further conclude that the police did not exploit Statement 1 in obtaining Statement 2 or Statement 3, and therefore, Statements 2 and 3 are not subject to suppression as the unlawful fruit of Statement 1. Finally, because Statement 2 was not obtained unlawfully, Statement 3 is not subject to suppression as the unlawful fruit of Statement 2.

I.

"Voluntary confessions are not merely a proper element in law enforcement, they are an unmitigated good, essential to society's compelling interest in finding, convicting, and punishing those who violate the law." Maryland v. Shatzer, 559 U.S. 98, 108 (2010) (internal quotation marks and citations omitted).

The protection provided by both the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Hawai'i Constitution is directed at preventing the government from *compelling* a criminal defendant to incriminate himself or herself. The language of the two provisions is virtually identical. The Fifth Amendment provides: "No person . . . shall be compelled in any Criminal Case to be a witness against himself," while Article I, Section 10 provides: "No person shall . . . be compelled in any criminal case to be a witness against oneself." (Emphases added). The Miranda requirements were judicially created as a means of safeguarding a defendant's constitutional privilege against compulsory self-incrimination. See Rhode Island v. Innis, 446 U.S. 291, 297 (1980). Neither the

5

constitutional provisions nor <u>Miranda</u> are designed to prevent the government from using voluntary, non-compelled statements made by a defendant.

<u>Miranda</u> warnings are only required when a defendant is subjected to custodial interrogation. <u>See</u> <u>State v. Paahana</u>, 66 Haw. 499, 503-04, 666 P.2d 592, 596 (1983). There is no dispute that Trinque was in custody after he was arrested, and thus the custody requirement is not at issue in this case. With respect to the interrogation requirement, the Hawaiʻi Supreme Court has held that "the ultimate question becomes whether the police officer should have known that his or her words or actions were reasonably likely to elicit an incriminating response from the person in custody." <u>State v. Ketchum</u>, 97 Hawaiʻi 107, 119, 34 P.3d 1006, 1018 (2001) (internal quotation marks, citation, and brackets omitted).

II.

The State argues that Statement 2 was not the product of a custodial interrogation. We agree.

Trinque made Statement 2 after Officer Rosa specifically told Trinque not to make any statements until Trinque was advised of his constitutional rights. It is difficult to see how telling a defendant not to make a statement can constitute "interrogation." Officer Rosa was not attempting to elicit an incriminating response -- he told Trinque not to make any statements. We conclude that there was no basis for the Circuit Court to conclude that Officer Rosa should have known that his words or actions in telling Trinque not to speak were reasonably likely to elicit an incriminating response.

The Circuit Court found that there was "no legitimate reason" for Officer Rosa to inform Trinque that he had worked on Trinque's daughter's case and to tell Trinque that he would not lie to Trinque and would be completely honest with Trinque. It is not clear why it would be improper for Officer Rosa to provide this information to Trinque or why Officer Rosa's apparent

6

attempt to develop rapport with Trinque should be viewed as illegitimate. More importantly, such actions were not reasonably likely to elicit an incriminating response, especially where Officer Rosa specifically directed Trinque not to make any statements. Under these circumstances, we conclude that Statement 2 was not the product of any police interrogation, and therefore, the Circuit Court erred suppressing Statement 2 on Miranda grounds. See State v. Ikaika, 67 Haw. 563, 567-68, 689 P.2d 281, 284-85 (1985).

### III.

We further conclude that: (1) Statements 2 and 3 are not subject to suppression as the unlawful fruit of Statement 1; and (2) because Statement 2 was not obtained unlawfully, Statement 3 is not subject to suppression as the unlawful fruit of Statement 2.

Under the "fruit of the poisonous tree" doctrine, "the use of evidence at trial which comes to light as a result of the exploitation of a previous illegal act of the police" is prohibited. State v. Fukusaku, 85 Hawai'i 462, 475, 946 P.2d 32, 45 (1997) (internal quotation marks and citation omitted).

> As applied to confessions, the "fruit of the poisonous tree" doctrine holds that where one confession or admission is illegally obtained and subsequently the defendant makes a further confession, the second confession is inadmissible in evidence as a "fruit of the poisonous tree" _if it results from an exploitation of the prior illegality. However, a confession made subsequent to an inadmissible one is not automatically inadmissible_. Where a confession has been illegally obtained, the government will not be allowed to introduce into evidence a subsequent confession unless it first demonstrates that the latter was not obtained by exploiting the initial illegality or that any connection between the two had become so attenuated that the taint was dissipated.

State v. Joseph, 109 Hawai'i 482, 499, 128 P.3d 795, 812 (2006) (emphasis added).

### A.

The record shows that Officer Rosa did not exploit Statement 1 in order to obtain Statement 2. As we have previously concluded, Statement 2 was not the product of

7

interrogation; rather, Trinque made Statement 2 despite Officer Rosa's directing Trinque not to make any statements. Under these circumstances, Statement 2 did not come to light as the result of the exploitation of Statement 1, and Statement 2 is not subject to suppression as the unlawful fruit of Statement 1.

With respect to Statement 3, because we have determined that Statement 2 was not obtained unlawfully, Statement 3 is not subject to suppression as the unlawful fruit of Statement 2. We also conclude that Statement 3 was not the unlawful fruit of Statement 1. Trinque made Statement 3 post-Miranda, after he was advised of his Miranda rights and in response to being asked whether he wanted to make a statement. The police did not exploit Statement 1 in order to obtain Statement 3. Trinque was not being questioned about anything concerning his involvement in any crime when he made Statement 3. Instead, after advising Trinque of his Miranda rights, the police were attempting to determine whether he wanted to waive those rights. The incriminating portion of Statement 3 was Trinque's non-responsive reply to the question of whether he wanted to make a statement.

Under these circumstances, we conclude that the police did not exploit Statement 1 in obtaining Statement 3 and that Statement 3 was not the unlawful fruit of Statement 1.

B.

Trinque cites State v. Eli, 126 Hawai'i 510, 273 P.3d 1197 (2012), in arguing that we should affirm the Circuit Court. Eli, however, is distinguishable.

While Eli was in custody, a police detective told Eli that he was under arrest for assaulting his daughter "and then 'asked [Eli] if he wanted to give a statement,' as it was 'his chance to give his side of the story.'" Eli, 126 Hawai'i at 522, 273 P.3d at 1208 (brackets omitted). The Hawai'i Supreme Court held that the police subjected Eli to interrogation and violated Eli's Miranda rights by "asking [Eli] for his side of the story and indicating that it was his chance to give that story" before

advising Eli of his <u>Miranda</u> rights. <u>Id.</u> at 523, 273 P.3d at 1209. The court concluded that by subjecting Eli to a custodial interrogation and obtaining his commitment to speak before <u>Miranda</u> warnings were given, the police rendered Eli's subsequent waiver of his <u>Miranda</u> rights invalid. <u>Id.</u>

In applying the "fruit of the poisonous tree" doctrine, the court held that the police exploited its <u>Miranda</u> violation and Eli's pre-<u>Miranda</u> statement (i.e., his agreement to make a statement and tell his side of the story) in obtaining Eli's post-<u>Miranda</u> statements. <u>Id.</u> at 524, 126 Hawaii at 1210. The court ruled that "[Eli's] pre-<u>Miranda</u> statement was 'exploited' in that [Eli] 'was subsequently questioned' on the same matter he had agreed to talk about before being informed of his <u>Miranda</u> rights." <u>Id.</u> at 524-25, 273 P.3d at 1210-11. The court therefore held that Eli's post-<u>Miranda</u> statements must be suppressed as the fruit of the police's <u>Miranda</u> violation and Eli's pre-<u>Miranda</u> statement. <u>Id.</u> at 525, 273 P.3d at 1211.

Unlike in <u>Eli</u>, the police in this case did not ask Trinque to make a statement, and did not obtain Trinque's commitment to make a statement, about Trinque's version of the matter for which he had been arrested, before advising Trinque of his <u>Miranda</u> rights. The police also did not exploit or even refer to Statement 1 in obtaining Statements 2 and 3. The police did not subsequently question Trinque about any matter he had talked about in Statement 1, or about any matter he had agreed to talk about in Statement 1. In obtaining Statement 2, the police did not violate Trinque's <u>Miranda</u> rights or subject him to interrogation. Trinque made Statement 3 after he was advised of his <u>Miranda</u> rights, and the incriminating portion of Statement 3 was Trinque's non-responsive answer to the post-<u>Miranda</u> inquiry regarding whether he wanted to waive his rights and make a statement. We conclude that <u>Eli</u> is distinguishable and does not control the decision in this case.

9

CONCLUSION

For the foregoing reasons, we hold that the Circuit Court erred in suppressing Statements 2 and 3. We vacate the Order Suppressing Statements and the Voluntariness Order with respect to Statements 2 and 3, and we remand the case for further proceedings consistent with this Opinion.

On the briefs:

Tracy Murakami
Deputy Prosecuting Attorney
County of Kauai
for Plaintiff-Appellant

Jon N. Ikenaga
Deputy Public Defender
for Defendant-Appellee

Concurring Opinion by Ginoza, J.

I agree with the majority opinion that, given the circumstances in this case, Statements 2 and 3 should not have been suppressed. However, in relation to the circumstances surrounding Statement 2, I take a somewhat different view than the majority in regard to Officer Richard Rosa's (Officer Rosa) statements to Defendant-Appellee Rick Trinque (Trinque).

Officer Rosa was assigned to watch Trinque after Trinque had been escorted out of the pasture and was being held in a residential area. The relevant and uncontested findings by the circuit court related to Statement 2 are as follows:

14. Once [Trinque] and the Officers arrived at the rear of the residence[,] . . . [Trinque] was ordered to sit on a bench, and Officer Silva immediately directed Officer Rosa to watch over [Trinque].

15. Prior to that date and time, Officer Rosa had never met or seen [Trinque].

16. Officer Rosa was dressed in plain clothes, with his police badge visibly hung around his neck.

17. Officer Rosa identified himself to [Trinque], telling [Trinque] that he was Sergeant Rosa from the Narcotics Unit of the Kauai Police Department.

18. Officer Rosa then went on to tell [Trinque] that he wasn't sure if Mr. Trinque knew who he was, but that he was the Officer who worked on [Trinque's] daughter's case, that if [Trinque] did not believe him, [Trinque] could talk to [Trinque's] daughter about it, that he would not lie to [Trinque], he would not "jerk [Trinque's] chain", and that he would be completely honest with [Trinque].[1]

19. Officer Rosa then told [Trinque] not to make a statement until [Trinque] was advised of his constitutional rights.

20. [Trinque] then said, "What for? You caught us red handed, there's nothing left to say, times are hard and we needed the money[.]"

In determining whether Officer Rosa's interaction with Trinque constituted interrogation, we consider the "totality of the circumstances" and, ultimately, whether Officer Rosa should

---

[1] Based on Officer Rosa's testimony at the suppression hearing, he had assisted Trinque's daughter in a case where she was having problems with certain individuals and she was concerned for Trinque because she was under the impression that the individuals were going to assault Trinque.

have known that his "words or actions were reasonably likely to elicit an incriminating response" from Trinque. State v. Eli, 126 Hawai'i 510, 522, 273 P.3d 1196, 1208 (2012) (citation and internal quotation mark omitted); State v. Naititi, 104 Hawai'i 224, 236, 87 P.3d 893, 905 (2004); State v. Ketchum, 97 Hawai'i 107, 119, 34 P.3d 1006, 1018 (2001). Because Officer Rosa specifically told Trinque not to make a statement until Trinque was advised of his rights, I agree with the majority that Officer Rosa's interaction with Trinque did not constitute interrogation. However, I would not suggest, as the majority opinion apparently does, that Officer Rosa's other statements to Trinque, made prior to Miranda warnings,[2] were not potentially problematic.[3] Although the "totality of the circumstances" in this case bear out that there was no interrogation, it seems foreseeable that in other circumstances, regardless of the intent of the officer, words or actions such as those by Officer Rosa could start to approach the line of interrogation. In other words, such statements, along with other surrounding circumstances, could become "words or actions [that are] reasonably likely to elicit an incriminating response." Eli, 126 Hawai'i at 522, 273 P.3d at 1208; see also, State v. Juranek, 844 N.W.2d 791, 802 (Neb. 2014)(noting that "questions intended to build rapport with a defendant can easily cross the line into interrogation").

I respectfully concur.

_Tim M Singe_

---

[2]  Miranda v. Arizona, 384 U.S. 436 (1966).

[3]  In particular, with respect to Officer Rosa's statements that he had worked on the case involving Trinque's daughter, that Officer Rosa would not lie to Trinque, would not jerk Trinque's chain, and that Officer Rosa would be completely honest with Trinque, the majority states: "It is not clear why it would be improper for Officer Rosa to provide this information to Trinque or why Officer Rosa's apparent attempt to develop rapport with Trinque should be viewed as illegitimate."

2