2017 UT App 200

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JOSE AMPARO GARCIA,
Appellant.

Opinion
No. 20150874-CA
Filed November 9, 2017

Second District Court, Ogden Department
The Honorable W. Brent West
No. 141901202

Samuel P. Newton, Attorney for Appellant

Sean D. Reyes and Jeanne B. Inouye, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
GREGORY K. ORME and MICHELE M. CHRISTIANSEN concurred.

HARRIS, Judge:

¶1     A man (Husband) and his wife (Wife) were attending a
barbecue at their neighbor's house one night when a fight broke
out. During the altercation, Husband was stabbed thirteen times,
and Wife was groped, assaulted, and threatened. Wife
subsequently called the police and implicated three assailants,
including Defendant Jose Amparo Garcia.

¶2     After trial, Defendant was convicted of attempted
murder, a first degree felony, and misdemeanor assault. He
appeals both convictions, contending that he was denied his
right to the effective assistance of counsel, and that the trial court
improperly failed to conduct an investigation after Defendant

informed the court that he was not satisfied with his counsel. We disagree, and therefore affirm Defendant's convictions.

BACKGROUND[1]

¶3  On the evening of May 31, 2014, Husband and Wife attended a barbecue at the residence of their neighbor, Defendant's uncle (Neighbor). The three began to socialize, and Husband and Wife ended up staying for several hours. Later in the evening, Defendant arrived at the barbecue along with a friend (Friend). Wife did not know Defendant or Friend.

¶4  At some point not long after Defendant and Friend arrived, an altercation erupted. Wife testified that, "out of nowhere," Friend told Husband that Friend was "going to shank you to death, mother 'effer." Friend got "riled up" with Husband, and Neighbor led Husband into the backyard, away from the confrontation with Friend. Wife further testified that, as Neighbor and Husband talked, Defendant and Friend began "getting hyped up" and pacing closer to Husband and Neighbor. When she tried to approach Defendant and Friend and persuade them to calm down, Friend grabbed her, held her with one arm so that she could not get away, and groped her. Wife testified that almost immediately after Friend let go of her, Neighbor suddenly began punching Husband. At this point, Defendant and Friend entered the backyard and joined Neighbor in punching and kicking Husband. Defendant and Friend appeared to be holding objects and delivering quick, short strikes to Husband's body. During the altercation, Husband was stabbed thirteen times, including twice in the face. As a result of the

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Holgate*, 2000 UT 47, ¶ 2, 10 P.3d 346.

stabbing, Husband's lungs were punctured and an artery in one of his arms was cut.

¶5    Wife also testified that, as the fight was ongoing, she took her phone out to call the police, but either Defendant or Friend knocked it out of her hands. As she tried to retrieve her phone, Friend and Defendant attacked her, shoving her into a fence and punching her in the face. She testified that Friend then attempted to leave the scene to get a weed-whacker while proclaiming, "I'm going to finish [Husband] off. I'm going to kill him." Wife then got in Friend's way and shouted that she was calling the police. Upon hearing this, Defendant and Friend resumed assaulting her and stated that they would kill both her and Husband if she called the police. Soon thereafter, Defendant and Friend fled, and Wife was able to notify the police.

¶6    Police officers responded to the incident and apprehended Friend later that night. During a police interview shortly afterward, Friend admitted to his involvement in the altercation but claimed that Defendant was solely responsible for stabbing Husband and that Defendant would confess if confronted.

¶7    The next day, Defendant was apprehended. During his subsequent police interview, Defendant confirmed that he was involved in the altercation with Husband. Specifically, although he admitted that he had punched and kicked Husband, he claimed that he had not hit or threatened Wife. He did not mention the stabbing. When the interviewing officer brought up the stabbing, Defendant expressed surprise. Defendant also claimed that Friend had told him that Friend had groped Wife, but Defendant maintained that he and Friend did not further assault her. Defendant also informed the interviewing officer that he had not wanted to implicate Friend because Defendant was afraid of being "violated" by members of his gang. At trial, one of the State's witnesses explained that gang members would be "violated" if they "snitched" on fellow gang members and

that being "violated" typically entailed getting "beat up," "stabbed," or suffering other consequences, depending on the severity of the "violation." During the interview, Defendant explained that he had been "violated" by the gang before and that gang members had put a gun to his loved one's head.

¶8 Neighbor also testified to his version of events. Neighbor acknowledged the altercation, but maintained that Husband had hit him first. He claimed he then lost consciousness almost immediately and could not remember the majority of the fight, and that he did not see who stabbed Husband. On cross-examination, Neighbor also acknowledged that he, Friend, and Defendant were all gang members and that it would be considered "snitching" if any of them were to implicate any of the others.

¶9 The State charged Defendant with attempted murder of Husband and with assaulting Wife. The State charged an "in concert" enhancement for both offenses, alleging that Defendant had committed them in concert with two or more persons, and charged a "use of a deadly weapon" enhancement for the attempted murder charge. With those enhancements, the attempted murder count was charged as a first degree felony, and the assault count was charged as a class A misdemeanor. *See* Utah Code Ann. § 76-5-203(2)(a)–(c) (LexisNexis 2012); *id.* § 76-4-10 (2012); *id.* § 76-5-102(3)(a) (Supp. 2017). Friend was charged separately for his involvement in the altercation.

¶10 Prior to Defendant's trial, Friend pled guilty to reduced charges in his own case. Thereafter, during Defendant's trial, Friend testified in contradiction to his earlier police-interview statements. Friend had initially told officers that Defendant had been solely responsible for the stabbing. However, at Defendant's trial, Friend testified that Defendant had merely punched and kicked Husband and that Friend was solely responsible for stabbing Husband.

¶11   During pretrial proceedings, Defendant was initially provided a public defender, and that appointed attorney appeared on Defendant's behalf at his initial appearance and at least once thereafter. Early in the proceedings, however, Defendant retained a different attorney, and upon that attorney's appearance, the public defender withdrew. Thereafter, and all the way through trial, Defendant was represented by his own retained lawyer.

¶12   At trial, the State relied primarily on the testimonies of Husband and Wife that Defendant, Neighbor, and Friend had attacked them without provocation and that Defendant and Friend had stabbed Husband. The State also introduced evidence that Defendant, Neighbor, and Friend were current or former gang members, and that their gang would discourage all three from "snitching" on each other. A witness for the State explained that Defendant's face tattoo—which was not shielded from the jury's view—marked his affiliation with a gang, and the witness expounded upon the notion that a gang member could be "violated" for snitching. Defense counsel did not object to the presentation of this gang evidence.

¶13   Instead, defense counsel relied on the testimony from Neighbor that Husband started the fight, and the new narrative from Friend—that Defendant never stabbed Husband—to present a theory of the case that limited Defendant's culpability. Defense counsel acknowledged Defendant's admission, in his police interview, that he had punched and kicked Husband, but defense counsel maintained that Defendant did so only to defend Neighbor from Husband. Further, defense counsel argued that, in the confusion of the fray, Defendant was not aware that Friend had stabbed Husband until after the altercation. Accordingly, defense counsel presented the theory that Defendant was innocent of attempted murder because, while he concededly assaulted Husband in defense of Neighbor, he did not do so while Friend was stabbing Husband and did

not know about or participate in the stabbing. Defendant did not testify at trial.

¶14 In closing arguments, the State argued that Neighbor and Friend were untrustworthy witnesses and maintained that the only credible version of the altercation was the version that Husband and Wife presented. The jury apparently agreed, returning a guilty verdict on both counts, as well as on the two enhancements to attempted murder.[2]

¶15 After his conviction but before his sentencing hearing, Defendant sent a letter to the court indicating that he was unhappy with his retained defense counsel and that he wanted to appeal. The trial court addressed the letter only briefly, by informing Defendant that his appeal was premature and instructing him about proper appellate procedure. The court then sentenced Defendant. Defendant now timely appeals.

ISSUES AND STANDARDS OF REVIEW

¶16 Defendant raises two arguments on appeal. First, he contends that defense counsel's performance was so deficient that he was denied his constitutional right to effective assistance of counsel. Specifically, Defendant argues that his attorney was ineffective by (a) conceding that Defendant assaulted Husband, a concession that Defendant asserts led inexorably to the legal conclusion that Defendant was guilty of being an accomplice to

---

2. Although the jury found that Defendant acted "in concert with two or more persons" in committing attempted murder, the jury also determined that Defendant had not acted "in concert with two or more persons" in committing assault. Accordingly, although the assault was originally charged as a class A misdemeanor, Defendant was ultimately convicted of class B misdemeanor assault.

attempted murder; and (b) failing to object to evidence that demonstrated that Defendant, Friend, and Neighbor were part of a gang. "A claim of ineffective assistance of counsel raised for the first time on appeal presents a question of law that we review for correctness." *State v. Charles*, 2011 UT App 291, ¶ 18, 263 P.3d 469.

¶17    Second, Defendant contends that the trial court erred by failing to further inquire into Defendant's post-verdict letter informing the court that he was dissatisfied with his counsel. "Whether a trial court should have inquired further into a defendant's dissatisfaction with counsel is reviewed for an abuse of discretion." *State v. Hall*, 2013 UT App 4, ¶ 8, 294 P.3d 632. However, this issue is unpreserved, and Defendant asks us to review this issue for plain error. Generally, to "establish the existence of plain error and to obtain appellate relief from an alleged error that was not properly objected to, the appellant must show" that an error exists, that the error should have been obvious to the trial court, and that the trial court's handling of the issue prejudiced the defendant. *See State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993). "If any one of these requirements is not met, plain error is not established." *Id.* at 1209.


ANALYSIS

I

¶18    The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend VI. Under this amendment, the states must provide counsel "for defendants unable to employ counsel unless the right is competently and intelligently waived." *Gideon v. Wainwright*, 372 U.S. 335, 340 (1963); *see State v. Von Ferguson*, 2007 UT 1, ¶ 14, 169 P.3d 423. Further, even if a criminal defendant is represented by counsel, that defendant's

right to counsel under the Sixth Amendment is violated if his counsel represents him "so inadequately" as to functionally deny him the assistance of counsel. *See Peyton v. Rowe*, 391 U.S. 54, 61 (1968). This principle applies both to attorneys appointed by the court for indigent defendants and to attorneys who are privately retained by the defendant. *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980).

¶19   To succeed on a claim that his defense counsel was constitutionally ineffective, Defendant "must show: (1) that counsel's performance was objectively deficient, and (2) a reasonable probability exists that but for the deficient conduct defendant would have obtained a more favorable outcome at trial." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162. To satisfy the first element of this test, Defendant "must overcome the strong presumption that [his] trial counsel rendered adequate assistance by persuading the court that there was *no conceivable tactical basis* for counsel's actions." *Id.* (alteration in original) (citations and quotation marks omitted). Trial counsel is given "wide latitude in making tactical decisions," and courts "will not question such decisions unless there is no reasonable basis supporting them." *Id.* (citation and internal quotation marks omitted). To satisfy the second element, Defendant must demonstrate that "'any deficiencies in counsel's performance [were] prejudicial to the defense.'" *State v. Mohamud*, 2017 UT 23, ¶ 14, 395 P.3d 133 (alteration in original) (quoting *Strickland v. Washington*, 466 U.S. 668, 692 (1984)).

¶20   In this case, Defendant makes two separate claims that defense counsel was ineffective, which we discuss in turn.[3]

---

3. Defendant has timely moved for remand, pursuant to Rule 23B of the Utah Rules Appellate Procedure, to supplement the record with additional information that he asserts could support his claims for ineffective assistance of counsel. We deny that motion because we conclude that the facts necessary to pursue

(continued…)

A

¶21    First, Defendant points to counsel's decision to concede to the jury that Defendant had assaulted Husband and argues that the legal import of this concession was effectively to admit Defendant's guilt as an accomplice to attempted murder. Defendant asserts that, in so doing, his attorney "serious[ly] misapprehend[ed]" the law. We are unpersuaded.

¶22    Defendant admitted during his police interview that he had punched and kicked Husband. Defense counsel had to decide what to make of that concession at trial. Several strategies were available to him. For instance, defense counsel could have argued that Defendant did not ever punch and kick Husband,

---

(…continued)

and adjudicate Defendant's ineffective assistance claims are already contained within the existing record.

We also deny Defendant's post-argument motion to supplement his rule 23B motion. We note initially that the rule expressly mandates that "[i]n no event shall the court permit a [rule 23B] motion to be filed after oral argument." Utah R. App. P. 23B(a). In addition, even if this motion could be considered timely, denying the post-argument motion to supplement is appropriate here because both of the items Defendant brings to our attention in the post-argument supplementation were issues that Defendant should have been aware of much earlier. The first issue involves events cited in an April 2017 newspaper article, but Defendant offers no persuasive explanation as to why he could not have brought the matter to our attention prior to the August 2017 oral argument. The other issue involves Defendant's assertion that his defense counsel had a conflict of interest, but the record reveals that the trial court raised this precise issue with Defendant at a hearing in June 2014, and Defendant offers no explanation as to why he did not raise the issue sooner.

that Defendant was confused during his first interview, and that after some weeks of reflection Defendant realized that he had actually never assaulted Husband. This option, however, would likely have required Defendant to testify in his own defense. Alternatively, defense counsel could have asserted that Defendant did not ever make that admission to the officer during the interview and that the police officer who claimed Defendant made that admission was lying. Or, counsel could have tried to work with Defendant's admission, conceding to the jury that Defendant assaulted Husband but arguing that Defendant was not guilty of attempted murder, even as an accomplice. None of these alternatives was ideal, and all of them came with downside risks. Counsel chose the latter option.

¶23 In general, the selection of one among several strategic options is common and not constitutionally ineffective. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984) (stating that "[t]here are countless ways to provide effective assistance in any given case" and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way"). After all, an attorney must play the hand he or she is dealt, and an attorney's decision about how to deal with adverse facts is the sort of thing that courts should not second-guess in the context of ineffective assistance claims. Indeed, this court has previously placed its stamp of approval on precisely this sort of tactical choice:

> [D]efense tactics, whereby counsel admits guilt on a lesser charge in the hope that the jury would then be more receptive to the claim that the defendant was innocent of the far more serious offense and acquit him thereof, is a perfectly acceptable strategy which should not be second guess[ed] by the courts.

*State v. Phillips*, 2012 UT App 286, ¶ 17, 288 P.3d 310 (alteration in original) (citation and internal quotation marks omitted). In

particular, selecting this strategy when one's client has already admitted to police that he committed assault is eminently rational and thus cannot be ineffective.

¶24 In this case, Defendant nevertheless claims that defense counsel's selection of these tactics had the legal effect of conceding his guilt not only to assault but also to the more serious charge of accomplice to attempted murder. Specifically, Defendant argues that defense counsel's "admission that [Defendant] helped assault [Husband] *while he was being stabbed* was an admission to the entire offense under the accomplice liability theory." (Emphasis added.) The flaw in this position, however, is that counsel did not ever admit, during his arguments, that Defendant assaulted Husband *while* Husband was being stabbed or that Defendant assaulted Husband at any time *after* Defendant was aware that Husband had been stabbed.

¶25 For a jury to convict a defendant under a theory of accomplice liability, the State "must show that an individual acted with both the intent that *the* underlying offense be committed and the intent to aid the principal actor in the offense." *State v. Briggs*, 2008 UT 75, ¶ 13, 197 P.3d 628; *see also id.* ¶ 14 (stating that "[a]n accomplice must . . . have the intent that *the* underlying offense be committed" (emphasis added)). *Briggs*'s use of the definite—rather than the indefinite—article is significant here. A defendant who only has intent to commit a lesser offense (e.g., assault) cannot be convicted of a more serious crime (e.g., attempted murder), even as an accomplice. *Id*. ¶ 13; *see also State v. Calliham*, 2002 UT 86, ¶ 64, 55 P.3d 573 (stating that "accomplice liability adheres only when the accused acts with the mens rea to commit the principal offense"). The accomplice need not have the same level of intent toward the more serious crime as the principal actor, *Briggs*, 2008 UT 75, ¶ 14 (stating that "it is not necessary for the accomplice to have the same intent that the principal actor possessed"), but in order to be convicted of the more serious charge, the accomplice must

have at least some level of intent that the more serious crime be committed.

¶26 These principles are illustrated by two cases cited by Defendant. In *State v. Garcia-Vargas*, 2012 UT App 270, 287 P.3d 474, two men entered a house, and at least one of them demanded money from, and began to assault, the occupants. *Id.* ¶ 2. The other man claimed that he initially believed they were in the house with permission and that he had no intention of committing aggravated robbery. *Id.* ¶ 17. However, after seeing his companion commit assault, the other man eventually joined in and aided in the assault. *Id.* This court determined that both men could be convicted of aggravated robbery, stating that "once [the first man] began hitting [the victim] and ransacking the house, [the second man] was on notice that [the first man] was committing robbery, yet he actively participated and aided [the first man] rather than fleeing or even remaining without participating." *Id.* (footnote omitted).

¶27 Likewise, in *State v. Lomu*, 2014 UT App 41, 321 P.3d 243, two men entered a convenience store at 3:30 a.m. *Id*. ¶ 2. One of them went to the cooler section and picked up a case of beer, and the other remained by the door to keep lookout. *Id*. While the man holding the beer was speaking with the store clerk, the man at the door "raised his shirt slightly, moved his hand to his hip, and informed the clerk he had a gun." *Id.* The man holding the beer reacted to this threat by taking the beer and fleeing together with the other man. *Id.* This court determined that both men could be convicted of aggravated robbery, even though the man holding the beer did not make the threat, because he assisted the other man after the threat was made by taking the beer and fleeing with him. *Id*. ¶¶ 2, 15.

¶28 In both of these cases, the criminal encounter escalated and after the escalation—and, more precisely, after the defendant was aware of the escalation—the defendant elected to remain involved in the criminal encounter. The defendant's

continued involvement in the enterprise after learning of its severity is what provided evidence of at least some level of mens rea regarding the more serious offense, and therefore gives rise to accomplice liability for the more serious offense.

¶29 In this case, in order for Defendant to be convicted of being an accomplice to attempted murder, it was not sufficient for Defendant to merely have had an intent that a lesser crime (e.g. assault) would be committed; rather, Defendant must have had at least some level of intent—in keeping with applicable statutes[4]—that murder would be attempted, as well as some intent to aid the principal actor in attempting murder. *See Briggs*, 2008 UT 75, ¶ 13. Even if Defendant did not actually stab Husband, he could have been convicted of being an accomplice to attempted murder if he remained involved in the enterprise after becoming aware of the stabbing.

¶30 While there was certainly evidence presented at trial to the effect that Defendant directly participated in the stabbing of Husband and that Defendant aided Friend in the enterprise after becoming aware of the stabbing, none of that information came from defense counsel's arguments. Rather, defense counsel's arguments were carefully couched to state that Defendant had

---

4. Utah's accomplice liability statute states that anyone "acting with the mental state required for the commission of an offense who directly commits the offense" or who "intentionally aids another person to engage in conduct" constituting the offense "shall be criminally liable as a party for such conduct." Utah Code Ann. § 76-2-202 (2012). A person may be convicted of murder by acting either "intentionally or knowingly." *See id*. § 76-5-203(2)(a) (2012). And a person may be convicted of attempted crimes, including attempted murder, if that person "acts with an awareness that his conduct is reasonably certain to cause that result." *See id*. § 76-4-101(1)(b)(ii) (2012).

punched and kicked Husband *before* the stabbing began, but that Defendant did not at any point participate or aid in the stabbing.

¶31    Unfortunately for Defendant, the jury apparently did not accept defense counsel's argument. But the argument was not constitutionally ineffective, and it did not constitute a legal admission that Defendant was guilty of being an accomplice to attempted murder. Defense counsel's argument was an appropriate strategy for dealing with Defendant's own previous admission that he had punched and kicked Husband and was well within "the wide range of reasonable professional assistance" that counsel was obligated to provide. *See Mohamud*, 2017 UT 23, ¶ 14 (citation and internal quotation marks omitted). There was clearly a "conceivable tactical basis" for defense counsel's actions, one that was in accordance with Utah law as discussed above. Accordingly, defense counsel's decision to concede assault was not constitutionally ineffective.

B

¶32    Defendant next argues that his defense counsel was ineffective in not doing more to prevent the introduction of evidence regarding Defendant's, Friend's, and Neighbor's gang affiliations and customs. Some of this evidence was introduced by the State, without objection from Defendant's counsel, and some of this evidence was affirmatively introduced by Defendant's counsel. Defendant now argues that defense counsel's decision to introduce and/or not object to this evidence amounted to ineffective assistance.

¶33    This court has previously acknowledged that "there may be some unfair prejudice inherent in making the jury aware of gang affiliation" in a criminal context. *State v. Milligan*, 2010 UT App 152U, para. 6. Indeed, we have noted that gang evidence should be viewed "with caution due to the risk that it may carry some unfair prejudice," including potentially leading "the jury to 'attach a propensity for committing crimes to defendants who

are affiliated with gangs or [allow its] negative feelings towards gangs [to] influence its verdict.'" *State v. High*, 2012 UT App 180, ¶ 26, 282 P.3d 1046 (alteration in original) (internal quotation marks omitted) (quoting *State v. Torrez*, 2009-NMSC-029, ¶ 32, 210 P.3d 228). Nevertheless, gang evidence is often admissible: "[i]n the appropriate context, gang evidence has probative value warranting its admission" even "over claims of prejudice." *Id.* ¶ 27 (citation and internal quotation marks omitted).

¶34 For two reasons, we are not persuaded that Defendant received ineffective assistance of counsel on issues related to the admission of gang evidence.

¶35 First, Defendant's counsel had a conceivable tactical basis for not objecting to the admission of evidence that Defendant, Friend, and Neighbor were members of a gang. Several of the witnesses involved in the case, most notably Friend, had changed their stories during the course of the case. During his initial police interview, Friend had stated that Defendant was the only one who had stabbed Husband, and that he (Friend) had not done so. Later, however, when he testified at Defendant's trial after pleading guilty to reduced charges, he sang a different tune. In front of the jury, Friend swore that he was solely responsible for the stabbing and that Defendant had merely punched and kicked Husband. Therefore, Defendant's counsel needed to find ways to emphasize Friend's trial testimony, while discrediting the initial tale Friend told to police.

¶36 In addition, Defendant himself, in his initial police interview, had not fully implicated Friend in the stabbing. Indeed, Defendant acted surprised to learn that Husband had been stabbed at all, and he maintained that he had not stabbed Husband. Defendant's counsel needed to find ways to explain why Defendant had not blamed the stabbing on Friend during his initial account to police.

¶37    Defense counsel apparently elected to accomplish both of these objectives by introducing, and by not objecting to, evidence that Defendant and Friend (as well as Neighbor) were members of a gang, that gang ethos prohibited "snitching" on other members of the gang, and that gang members who "snitched" on other members would be "violated" by other gang members. In this way, defense counsel could explain why Defendant had not "snitched" on Friend during his interview and could also bolster the credibility of Friend's trial testimony, couching it as a manner of repentance for his earlier "snitching" during his police interview.

¶38    Defense counsel's decision to introduce, and not object to, evidence that Defendant was a member of a gang is therefore properly classified as a tactical decision, one that this court will not second-guess. *See Strickland*, 466 U.S. at 689 (1984). The evidence was merely that the three were members of a gang; no evidence was introduced regarding any specific actions that had been taken by the three as members of the gang, or by the gang generally.[5] There were certainly valid tactical reasons for defense counsel to introduce, or to acquiesce to the introduction of, evidence of this nature. Therefore, counsel's performance in so doing was not objectively deficient.

¶39    Second, Defendant has not sufficiently demonstrated that an objection to the introduction of gang evidence would not have been futile. "The failure of counsel to make motions that

---

5. Defendant also maintains that his counsel was ineffective because he did not cover up Defendant's gang-related facial tattoo at trial. We disagree. The tattoo was only briefly mentioned at trial and, as noted, the gang evidence introduced was general rather than specific. Defense counsel's decision not to cover up the tattoo, or to object to a question about it, was in line with his tactical decision to use the gang evidence to explain Defendant's and Friend's inconsistent accounts.

would be futile if raised does not constitute ineffective assistance," because "the decision not to pursue a futile motion is almost always a 'sound trial strategy.'" *State v. Bond*, 2015 UT 88, ¶ 75, 361 P.3d 104 (citation omitted); *see also State v. Edgar*, 2017 UT App 54, ¶ 17, 397 P.3d 656 (concluding that an objection to the admission of certain evidence would have been futile where defendant could not show a "reasonable probability" on appeal that the trial court would have sustained an objection to the admission of the testimony).

¶40    The gang evidence admitted at trial was limited to the gang affiliations of Defendant, Friend, and Neighbor and to a description of the gang's attitude towards "snitching." Beyond the description Defendant gave police about "violation" and the information that being "violated" by a gang for snitching entailed being targeted with violence, no description was given of the gang's reputation or of any crimes that the gang's members may have committed.

¶41    Under rule 404(b)(1) of the Utah Rule of Evidence, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." However, "mere evidence of gang affiliation that does not relate to prior bad acts does not violate rule 404's prohibition against character evidence." *State v. Gonzalez*, 2015 UT 10, ¶ 39, 345 P.3d 1168. Here, the State presented evidence of various participants' gang affiliations, as well as a general description of gang culture as it relates to "snitching" and "violation." The State did not relate this evidence to any prior bad acts attributed to Defendant, Friend, or Neighbor, and the only evidence of any specific prior bad acts attributed to the gang itself was limited to discussion of the gang's habit of "violating" snitches. If Defendant's counsel had objected to the admission of this evidence under rule 404(b), the trial court would have been well within its discretion to overrule the objection. *Id*.

¶42    Under rule 403 of the Utah Rules of Evidence, the result would have been no different. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," Utah R. Evid. 401, and a trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice," Utah R. Evid. 403. In this case, the State charged Defendant with attempted murder with an "in concert" enhancement, which required the State to prove that Defendant had committed the crime "in concert" with others. *See generally State v. Lopes*, 1999 UT 24, ¶ 8, 980 P.2d 191 (stating that "in concert" for the purposes of enhancement "means that the defendant acted with at least two other people and 'that those other persons must also be liable for the underlying offense'" (citation omitted)). The gang evidence proffered by the State was relevant and highly probative to explain why Defendant might attempt to assault Husband "in concert" with Friend and Neighbor. *See State v. Toki*, 2011 UT App 293, ¶ 45, 263 P.3d 481 (determining that gang evidence admitted in support of an "in concert" enhancement was "highly probative of an essential element of one of the charges" and was "not *unfairly* prejudicial"). In addition, the gang evidence was probative because it contextualized the inconsistent statements given by Defendant and Friend, by providing a possible explanation—fear of being "violated" for "snitching"—for the changed stories. *See Milligan*, 2010 UT App 152U, para. 4 (determining that "[r]eferences to gang punishment for being a snitch" were "relevant" because "[t]he information regarding snitching explained the codefendant's fear of retribution and thus made him more believable despite the conflict between his initial and final characterizations of the pertinent events"). We are not persuaded that the probative value of the proffered gang evidence was substantially outweighed by the danger of unfair prejudice. Defendant has therefore "not shown a reasonable probability that an objection to the testimony's admissibility under rule 403 would have been sustained." *See Edgar*, 2017 UT App 54, ¶ 17.

¶43 Accordingly, even if Defendant's trial counsel had made a proper objection to the admission of the gang evidence, the objection would have been futile. Because "[f]ailure to raise futile objections does not constitute ineffective assistance of counsel," *State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546, and because Defendant's trial counsel had valid tactical reasons for seeking admission of the gang evidence, counsel did not render ineffective assistance by failing to resist admission of the gang evidence.

II

¶44 Finally, Defendant argues that the trial court plainly erred when it did not conduct a further inquiry into Defendant's post-verdict dissatisfaction with his trial counsel. In particular, Defendant cites *State v. Pursifell*, 746 P.2d 270 (Utah Ct. App. 1987), and argues that the trial court failed to comply with *Pursifell*'s instruction to make "reasonable, non-suggestive efforts to determine the nature of the defendant's complaints and to . . . determine whether the defendant's relationship with his or her appointed attorney has deteriorated to the point that sound discretion requires substitution." *Id.* at 273.

¶45 Because Defendant did not object to the trial court's conduct until this appeal, this issue was not preserved for review. *See State v. Pinder*, 2005 UT 15, ¶ 45, 114 P.3d 551 ("Generally speaking, a timely and specific objection must be made [before the lower court] in order to preserve an issue for appeal."). Where the issue is unpreserved, it is unreviewable on appeal, unless Defendant can "demonstrate that 'exceptional circumstances' exist or [that] 'plain error' occurred." *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. In this instance, Defendant asks us to review for plain error the trial court's decision not to conduct a *Pursifell* inquiry. Generally, to "establish the existence of plain error and to obtain appellate relief from an alleged error that was not properly objected to, the appellant must show" that an error exists, that the error should have been obvious to the

trial court, and that the trial court's handling of the issue prejudiced the defendant. *See State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993). "If any one of these requirements is not met, plain error is not established." *Id.* at 1209.

¶46　For two independent reasons, Defendant's arguments do not persuade us that the trial court plainly erred. First, the counsel with whom Defendant became dissatisfied was not appointed by the court. Instead, Defendant's counsel at that point in the case was an attorney that Defendant had privately retained. Defendant could have fired his counsel at any time, without asking the court's permission to do so. After firing his counsel, Defendant could have then hired another more to his liking or, if he believed that his financial situation still warranted it, he could have claimed indigency and asked the court to re-appoint a public defender. But Defendant did not do either of these things. Instead, after his conviction, Defendant wrote a letter informing the trial court that he intended to appeal and that he disagreed with his trial counsel's decisions in a number of ways. The trial court responded by informing Defendant that any appeal would be premature prior to sentencing and provided Defendant with information regarding the proper method for appealing his conviction. Significantly, Defendant cites no authority for the proposition that a trial court has an obligation to conduct a *Pursifell* inquiry with regard to retained counsel, as opposed to appointed counsel. It is not plain error for the court to "fail to take some action on the basis of unsettled law." *State v. Bruun*, 2017 UT App 182, ¶ 68; *see also State v. Roman*, 2015 UT App 183, ¶¶ 10-11, 356 P.3d 185 (noting an appellant cannot successfully "invoke the plain error exception to our preservation rules" if he cannot demonstrate that there is "settled appellate law" applicable to the alleged error). We are unpersuaded that the trial court committed plain error by responding as it did to Defendant's letter.

¶47　Second, Defendant has not adequately explained how he was harmed by the trial court's response to his letter. By the time

Defendant raised the issue, the jury had already convicted him on all charges and he was simply awaiting sentencing. At that point, it is unclear what substitute counsel could have done for Defendant other than file a timely appeal, which was accomplished in any event. Defendant has not shown prejudice under these circumstances.

CONCLUSION

¶48    Defendant has failed to show that his trial counsel was constitutionally ineffective, or that the trial court plainly erred in its response to his letter. Accordingly, we affirm his convictions.

————————